## THE STATE v. J. H. SPARKS AND J. BANKHEAD MAGRUDER.

By the production of a prisoner under a writ of *habeas corpus* the court acquires absolute jurisdiction of the person of the applicant, and the original cause of commitment is suspended until the case is disposed of.

When the criminality of an act depends solely upon the intention with which it was done, the ignorance of the party charged, or his inability to obtain proper information, may be considered in determining the question of guilt; but the forcible interference with and defiance of the lawful authority of a civil court is a crime irrespective of the intention of the party who commits it; and the plea of ignorance is wholly inadmissible.

The act of the Confederate Congress suspending the writ of *habeas corpus* in certain cases did not constitute, under any possible state of facts, a justification of the defendants in taking the law into their own hands and defying the process of the court.

That act did not authorize the delegation of the powers conferred upon the commanding general of the Trans-Mississippi Department.

Neither did that act forbid or suspend the issuance of the writ, which should still have issued unless it was apparent from the application itself that the relief could not be granted. In all cases it was the duty of the party to whom the writ was directed to answer to it, so as to manifest whether the case was one in which the privilege of the writ was or was not suspended by the act.

ORIGINAL ATTACHMENT for contempt. Tried before the Supreme Court.

The facts of this case are sufficiently collated in the opinions delivered by the court upon the first and at the present hearing. For a report of the first hearing reference is made to page 627 of this volume.

*J. H. Sparks and J. B. Magruder,* for themselves.

MOORE, J.—This case was transferred to this place from Austin to afford the defendant Magruder an opportunity of filing an answer, in obedience to an order of the court then made upon him. His answer is now before us, and we therefore proceed to make a final disposition of the case. The preliminary facts out of which this proceeding has originated are sufficiently stated for the proper

45*

understanding of the action of the court in the opinion which was delivered in it at Austin, and need not be here again repeated. At that time we felt constrained to say from the facts then disclosed, that Maj. Gen. Magruder was apparently guilty of a palpable and glaring violation of law and contempt of this court. We trusted, however, that it was only necessary to give Maj. Gen. Magruder an opportunity of being heard, to relieve him from so disreputable an imputation, and the court from the painful duty of pronouncing the highest military officer of this department guilty of using the authority with which he has been entrusted for the public welfare and the defence of the State, as a means of violating the law, in-terfering with and contemning the authority and process of its courts, and thus violating social order, which he should have been the first to have upheld and sustained. We have, however, we regret to say, been wholly disappointed in this just expectation. The answer of Maj. Gen. Magruder instead of exculpating him, places him, if possible, in a still more unenviable light than did the facts previously developed in the record. Before reading his answer, it might have been supposed that his violation of the au-thority of the court and interference with its functions was not the result of premeditation and design, or the assumption of an au-thority plainly at war with the most obvious and best settled principles of law and judicial procedure.

The pretext upon which Maj. Gen. Magruder undertakes to justify his interference with, and attempting to set at naught the authority of the court, is mainly upon the startling ground that the court does not acquire jurisdiction of the persons of the appli-cants for a writ of *habeas corpus*, pending the hearing on its return. That the extent of the power he claims for himself, and the restrictions he assumes to place upon the authority of the court in the discharge of its duties, when its functions are invoked by this great writ for the security of personal liberty, may be more readily perceived, we make the following extracts from his answer.

" The Maj. Gen. commanding was not aware that these persons had passed out of the hands of the military authorities, when they were brought before the Supreme Court upon the writ of *habeas*

The State v. Sparks.

*corpus;* nor did he intend, when they were brought before that tribunal, to yield them to the entire control of the civil powers, until it had been decided that they were illegally arrested, and unlawfully in the possession of the authorities restraining them of their liberty. The mandate of the court required the prisoners to be brought before it, and the parties detaining them to show by what authority, &c. The prisoners were brought, and the proper returns were made, and the Maj. Gen. commanding supposed that he had virtually the possession of the prisoners, until the Hon. court before whom they were brought should decide whether or not they were properly and legally in possession of the military authorities. The idea that the parties suing out the writ of *habeas corpus* were to be entirely under the control and direction of the Supreme Court, and entirely free from the control of the military authorities as soon as they were brought before that tribunal, was one which the Maj. Gen. commanding could not entertain; nor did he contemplate that the guard which he had ordered to accompany these men from San Antonio to Austin, in obedience to the mandate of the Supreme Court, had left the prisoners in the hands of the sheriff of Travis county, and returned to San Antonio, until made acquainted with the fact by Maj. Sparks commanding post at Austin."

In another part of the answer he says, "This was the view taken by the Maj. Gen. commanding, and he did not suppose that the prisoners had been transferred from his custody to that of the civil authorities; but that he was only liable in case they were not before the court, when required and necessary to be there pending the trial or investigation of the case. The law holds the party restraining another of his liberty responsible for his act, if the restraint be illegal, but it does not take the prisoner out of his custody until the illegality is determined."

Again he subsequently says, "An official copy of the law of congress suspending the writ of *habeas corpus* having been received at these headquarters, and under it and in accordance with its provisions, Lieut. Gen. E. Kirby Smith commanding Department Trans-Mississippi, having ordered the Maj. Gen. commanding to detain the prisoners heretofore alluded to, an order was dispatched

forthwith to Maj. Sparks (whom the Maj. Gen. commanding believed to be in possession of the prisoners, the guard from San Antonio having returned home, and the commander of the post at Austin having been ordered to guard the said prisoners,) directing him to bring Messrs. Peebles, Baldwin, Zinke, Hildebrand and Seeliger, away from Austin under a sufficient guard, and to disregard 'the present writ of *habeas corpus*, or any writ which may subsequently be issued.' "

We will not pause to cavil with the seemingly contradictory statements shown in these extracts from Major General Magruder's answer. It is immaterial at present to inquire whether he knew, as he says he was informed by Major Sparks, that the prisoners had been placed in charge of the sheriff ; or supposed that they were still under the control of his subordinate officers, as he insists should have been the case. The prisoners, he evidently intends to insist in point of right, if not in fact, were under his control ; that they did not, upon the return of the writ of *habeas corpus*, pass into the custody and jurisdiction of the court ; that at least he did not intend to surrender the entire control of them to the civil authority. Upon this hypothesis, and an equally obvious misconception of the facts of the case and the law of congress suspending the privilege of the writ of *habeas corpus*, he seeks to excuse, if not to justify his interference with and violation of the mandates of the court, and his order to his subordinate officer to disregard its process. If it were not for the mischievous character of such an assumption, coming from such a source, we would deem it scarcely necessary to say that it is unsustained by judicial authority or plausible argument. It will perhaps be admitted, even by those with whom it has become of late too much the fashion to violate the rights of person and property upon the plea of " a military necessity," as a novelty of which the defendant is entitled to the paternity.

He admits now, it is true, since, as he says, this seems not to be the view entertained of the law by this court, that he may be mistaken as to its correctness ; but if so, he seems to rely upon his ignorance as an ample vindication of his crime. When the criminality of an act depends solely upon the intention with which

it is committed, ignorance or inability to obtain proper information may be considered in determining the question of guilt. But the charge upon which these parties are before us, is for an act in violation of law, and therefore a crime independent of the intention of the parties who committed it, as much so as any other crime for which they could be indicted. It can, however, excite but painful reflections to find an officer in the high position in which Major General Magruder has been placed, and who must so often be called upon to deal with the rights of person and property of many citizens, seeking to defend himself from a criminal imputation upon the ground of ignorance. Such a plea could not be admitted in favor of the humblest citizen, with sufficient capacity to render himself responsible for the consequence of his acts. Does it come with a better grace from this high officer? At least, we think it is not expecting too much of him, if ignorant of the plainest and simplest principles of the administration of the law, that he should inform himself in respect to them before undertaking to interfere with and control the judicial tribunals of the country.

That hereafter even Major General Magruder may have no ground to doubt the rule by which he should be governed when called upon to answer to a writ of *habeas corpus*, we quote what is said on this subject by a standard elementary writer : " Pending the examination or hearing, the prisoner in all cases on the return of the writ is detained, not on the original warrant, but under the authority of *habeas corpus*. He may be bailed on the return *de die in diem*, or be remanded to the same jail whence he came, or to any other place of safe keeping under the control of the court, or officer issuing the writ, and by its officer brought up from time to time, till the court or officer determines whether it is proper to discharge or remand him absolutely. The King's Bench may, pending the hearing, remand to the same prison or to their own, the Marshalsea. The efficacy of the original commitment is suspended by this writ while the proceedings under it are pending, and the *safe keeping of the prisoner is entirely under the authority and direction of the court issuing it, or to which the return is made.* (Per Nelson, *in re* J. Kaine, 14 How., 134; Bac.

Abr. title, Hab. Corp., B. 13 ; The King v. Bethel, 5 Mod., 22, 1 Vent., 330–346 ; Fort., 242 ; Hurd on Hab. Corp., 324.)

There is another point, the importance of which forbids our passing it unnoticed. Major Gen. Magruder bases his right to order his co-defendant Sparks to take the prisoners, who are under the control of the court, from out of its custody, and to disobey any future writ from the court, upon the recent act of Congress suspending the privilege of the writ of *habeas corpus*, and that there was an order under it, from the Commanding General of the Trans-Mississippi Department, for the detention of these prisoners. If it were admitted that this law, and the alleged order made under it, are quite sufficient to have stopped the investigation of the case pending before the court on the *habeas corpus*, and to require the immediate remittal of the prisoners to the military authorities, it is altogether evident that it could only have been done by the order and judgment of the court ; and if the court had failed or refused to make the order, however obvious might have been its error in so doing, it would not have justified the defendants, or any others, in taking the law into their own hands and disobeying or violating its process. The proposition that the process of a court in a case which, ultimately, it should dismiss, may be treated with disobedience, is one which cannot, for a moment, be sustained. In discussing this question in the case of Passmore Williamson, Mr. J. Black remarks : "We, ourselves, have heard many cases through and through before we became convinced that it was our duty to remit the parties to another tribunal. But we never thought that our process could be defied in such cases more than in others." And Mr. Justice Lewen, with great force, says : "It is an essential element of judicial authority that it must be the judge of its own jurisdiction ; and I do not know that this rule is peculiarly applicable to the higher courts. The lower must act upon it, subject to the higher social law that is involved in official subordination. Often the question may be erroneously decided. Often such decisions may result in great injury to the citizen, but it is the lot of government to err, because it is human ; and a man of well trained mind will think it no great hardship to submit to authority even in error. In the name of order, the country demands,

and has the right to demand it." Again he says : " In civil matters there can be no moral principle of higher importance than the one that is most deeply involved in this case. It is a principle of action that is as binding on the conscience as any other. It is the great moral principle of social man. Without it, we endanger and retard our social progress. Without it, we confound all official subordination, and affect with disease the very organs of social life. This principle expresses itself, as best it can, in our civil institutions, and thus originating, they are morally entitled to our respect and obedience, imperfect as we may suppose them to be. He that rejects this principle from his moral code, or gives it a low place there, can hardly be an orderly citizen, but must be dangerous to the public peace and progress, in proportion as he is otherwise intelligent, influential and active." (26 Penn. State Rep., 2 Casey, 9.)

We may also add, the prisoners before the court, as appears from Major Gen. Magruder's answer to the writ of *habeas corpus*, were arrested by his order, and not by that of the Lieutenant General commanding the Trans-Mississippi Department. The law suspending the privilege of the writ of *habeas corpus*, therefore, had nothing to do with the case presented by his answer for the investigation of the court. Nor had the alleged subsequent order of Gen. Smith, for the detention of these parties, been presented to the court in a manner to require it to suspend further action upon it.

The order of Major Gen. Magruder, directing Major Sparks to disregard " the present writ of *habeas corpus*, or any writ which may subsequently be issued," is also clearly in violation of the act of Congress, by which he pretended to have been guided. This act confers no such authority on the high officers authorized by it to suspend the privilege of the writ in the particular cases enumerated in it; much less does it tolerate its assumption by Major Gen. Magruder, or its delegation by him to his subordinate officers. The law does not forbid or suspend the issuing of the writ, and unless it appears from the application that relief could not be granted, it may and should be issued by the court, and it is, *in all cases*, the duty of the party, to whom it is directed, to answer to it.

That the privilege of the writ in certain cases, and under particular circumstances, is suspended, which, otherwise, would have entitled the applicant to the production of his body along with the return to the writ, and an inquiry by the court into the cause of his detention, gives no sanction to this plain misconstruction of the law, and usurpation of power claimed by Major Gen. Magruder, and attempted to be conferred by this order upon his subordinate officer.

The answer, we believe, presents only the additional fact that the defendant, when he gave the orders to his subordinate officer to wrest from the court the prisoners who were in its custody, to disobey the mandate by which they were held, or any writ it might issue, and to remove them, under military escort, to such place as he might direct, at the same time caused a letter to be addressed to the court, in which he assured it that he intended no contempt of the court, but entertained for it the most profound respect; that it was his pleasure, at all times, to sustain the civil authorities; and that it was, also, his studious desire to avoid all conflict between the military authorities and civil tribunals. Similar manifestations of exquisite politeness by criminals, while in the act of violating the law, will, perhaps, readily suggest themselves to the readers of fictitious literature; but we doubt if its parallel can be easily found in the dry details of judicial proceedings.

We have felt called upon to say so much in this case, because, from the position and official responsibility of the principal offender, and the situation of the country, we cannot resort to the ordinary punishment of imprisonment by which such offences are usually repressed and corrected. Yet, the magnitude of the offence, in its paralyzing influence on the usefulness of the judicial tribunals of the country, if unchecked, and that it is the first instance of the kind in which the court has been called to act since its organization, and especially the vital interest of the citizens in respect to personal liberty and security from military usurpation, forcibly admonish us that the acts of the defendants should not be passed by without the brand of our most decided condemnation.

As we have said in our former opinion, the order of Major Gen. Magruder furnishes no justification for the act of Major Sparks,

The State v. Sparks.

and the court would be fully justified in punishing him by either fine or imprisonment. But such a fine as the law authorizes us to impose, would, in our opinion, be altogether inadequate to the offence of which Major Gen. Magruder is guilty. The situation of the country, as we have said, forbids our attempting to punish him by imprisonment. We feel that it would illy comport with the dignity of the court to visit its penalties upon the subordinate offender, while the principal is enabled to go unwhipped of justice. We shall, therefore, discharge the rule in this case, with a judgment against the defendants merely for costs. But as it involves questions of equal, if not greater, political than judicial importance, we will order a copy of the proceedings had in the case to be transmitted to His Excellency, the Governor, that he may give them such consideration as in his judgment they may deserve, and that he may take such action in the premises as may be compatible with public policy and interest.

It is the judgment of the court that the defendants be discharged upon the payment of costs.

Judgment rendered.