No. 5864.

## W. A. DAWSON *v.* THE STATE.

LOCAL OPTION LAW—REPEAL.—At an election held on the ninth day of December, 1886, the local option law was adopted by the voters of Erath county, and the law, as it then existed (authorizing a second election within one year), went into effect. On the twelfth day of September, 1887, the appellant was prosecuted to conviction for a violation of the said law on the twenty-fourth day of June, 1887. On the twelfth day of March, 1888, pending appeal from said conviction, the said local option law, at an election held by the qualified voters of Erath county, was repealed, and, under previous decisions of this court, the appellant relies upon this repeal to reverse the judgment and dismiss the prosecution against him. But the Assistant Attorney General insists that by the

effect of the amendatory· act of July 4, 1887, extending the period of prohibition to two years, the second election, whereat the local option law was repealed, was a nullity. *Held:* That the said amendatory act could not apply to localities wherein local option was in force at the time of its enactment, and can apply only to localities which have · adopted local option since its enactment, or which may hereafter adopt it. The second election in Erath county was legal and valid, and operated to repeal the local option law as it then existed. See the opinion for an elaborate discussion of the question.

APPEAL from the County Court of Erath. Tried below before the Hon. W. W. Moores, County Judge.

· The opinion discloses the case.

*Frank & Devine,* for appellant.

*W. L. Davidson,* Assistant Attorney General, for the State: By article 3236, Revised Statutes, the time at which a second election could be held, under the option law, within the same limits, was fixed at one year.

By chapter 104, acts of 1887, page 97, this article was amended and among other things the time was changed from one year and fixed at two. Title 63 of the Revised Statutes, as amended by chapter 104, above cited, embraces all of the law upon the subject of local option elections; and all elections ordered and held since said act took effect, for the purpose of determining whether or not the sale of intoxicating liquors shall be prohibited, must comply with the provisions thereof; otherwise such an election will be inoperative and of no force. While section 20, article 16, of the State Constitution, confers upon the people the right to determine this question in their respective localities, at the same time it vests the legislature with the power of regulating the manner and time of exercising this right. The power to determine the question is governed by the law in operation at the time the people of any particular locality attempt to exercise it. The legislature at its last session having, in conformity with the constitution, provided the ways and means of doing so, it follows that those who would avail themselves of the constitutional privilege must comply with the law upon the subject in operation at the time the vote is taken. When local option has been adopted, it is not simply for one year, but for all time, or until the people by their vote, taken in the manner as pro-

vided by law, revoke it. The fact that at the time local option was adopted it could, under the law then in force, be revoked in one year, conferred no right which would preclude the legislature from changing the time to two years. A citizen has no vested right in statutory privileges. (Cooley's Const. Lim., page 479.) It was perfectly competent for the legislature to change the time. Such legislation is not retroactive or retrospective as contemplated by section 16, article 1, of the State Constitution. The term retroactive in the Bill of Rights was designed to embrace laws which are not included in the description of ex post facto laws, or laws impairing the obligation of contracts, but which destroy or impair vested rights. Laws which affect the remedy or procedure merely are not within the scope of the inhibition against retroactive laws, unless the remedy be entirely taken away, or so encumbered with conditions as to render it useless or impracticable. (4 Texas, 470, and cases cited in foot note; 62 Texas, 729; 4 Texas Ct. App., 312; 12 Texas Ct. App., 418.) The recent act upon the subject of local option elections does not destroy or impair any vested right; neither does it take away any remedy or right of procedure. It simply regulates the manner of exercising the right, by extending the time from one to two years in which elections may reoccur. Erath county having adopted local option on the ninth of December, 1886, no election for that purpose can be legally held until the expiration of two years from that date. The same rule applies to those counties which have rejected local option within the last two years.

Willson, Judge. On the ninth day of December, 1886, what is commonly known as the "Local Option" law, was adopted in the county of Erath, at an election held for the purpose of determining whether or not said law should be adopted in said county. On the twelfth day of September, 1887, information was presented in the county court of said county, charging the defendant with violating said law on or about the twenty-fourth day of June, 1887. On the twelfth day of September, 1887, the same day on which said information was presented, the cause was tried, and the conviction from which this appeal is prosecuted was had. On the twelfth day of March, 1888, pending this appeal, a second election was held in said county for the same purpose as the first election was held, and which resulted

in a majority "against prohibition," and such result was duly declared by the commissioners court.

Upon this state of facts the defendant bases a motion to set aside the conviction and dismiss the prosecution, because, as he contends, the law under which he was convicted has been repealed by the result of the second election, and therefore the judgment rendered against him can not be enforced. To this proposition, the Assistant Attorney General replied that the second election was a nullity, because held before the expiration of two years after the holding of the first election, and therefore did not have the effect to repeal local option in Erath county. This issue requires a consideration and determination of the effect of the amendatory act of July 4, 1887 (Acts Twentieth Legislature, p. 96; Sayles's Civ. Stat., art. 3227 et seq.). upon the statute as it was at the time of the adoption of local option in Erath county, on December 9, 1886.

By the statute in force at said last named date, it was permissible to hold a second election after the expiration of twelve months from the date of the first election. (Rev. Stats., art. 3236.) But that provision, as amended by the act of July 4, 1887, supra, provides that a second election shall not be held in less than *two* years after the first election. (Sayles's Civ. Stats., art. 3236.) Does the provision as thus amended deprive a locality which adopted local option under the old law, of the right which they had under that law of holding another election upon the issue, at the expiration of twelve months from the time of the first election? Or, is not the operation and effect of the amendatory act confined to localities which might thereafter adopt said local option law? Is not the amendatory act applicable only to elections held after it went into force?

Section 20 of article 16 of the Constitution provides as follows: "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." What is the extent of the power conferred upon the Legislature by the foregoing provision? Simply to enact a law enabling the qualified voters of the localities designated to determine, in accordance with such law, whether the sale of intoxicating liquors shall be prohibited within specified limits. No power was conferred upon the Legislature to prohibit the sale of intoxicating liquors, but such

power was vested *alone* in the qualified voters of the localities named—such power to be exercised by them in the manner to be provided by the Legislature. It is only by a majority vote of the qualified voters of a locality that the sale of intoxicating liquors within the limits of said locality can be prohibited. Hence is derived the common name of the law upon the subject, that is, the "Local Option Law." While it is a general law in the sense that it may be adopted in any portion of the State, it is nevertheless, in its effect and operation, when adopted, essentially local, deriving its force directly and entirely from the will of the qualified voters of the locality in which it is adopted, and continues in force in such locality until it is abrogated by the will of said voters declared in the manner provided by law. This will, this power on the subject, is absolute and exclusive in the qualified voters of the locality, to be declared and exercised by them, in accordance with the law enacted in pursuance of the provision of the Constitution we have quoted.

Now, when the qualified voters of Erath county adopted the local option law, it was with the full knowledge that at the expiration of twelve months from the time they voted upon the issue another election might be held in said county, whereat, if they were dissatisfied with the operation of the law, they would be afforded the opportunity of ridding themselves of it. They were not required, as the law then was, to adopt the law for a longer time than twelve months, but for that period of time they did adopt it, and were bound by it, and were likewise bound by it until, by the declared will of a majority, in the mode prescribed by law, they might repeal it. If the issue had been submitted to them whether or not they would adopt the law for the period of *two* years, or any other time than *one* year, they might not have adopted it. They voted upon no such issue. Their will was not declared exept for the period of *one* year. They were willing to try the law for that period, and as much longer as a majority of them might allow the law to stand.

Now, the will of the qualified voters having been ascertained and duly and legally declared, what power has the Legislature to interfere with that will—to substitute in its place its own will materially variant from that expressed by the voters in adopting the law? If the power exists in the Legislature to deprive the locality of the right to have another election, for the period of two years, the same exists to deprive them of such right for ten, twenty or other number of years, and thus the Legislature

would fasten upon the locality a law which they adopted merely as an experiment for a short period of time, and from the practical operation of which, during that period, they may have become convinced should be repealed, never imagining, when they voted upon the issue, that the Legislature would, or could, continue the law in operation in opposition to the will of a majority of the qualified voters of the locality. They, the qualified voters, enacted the law; it is their creature, called into existence by their direct agency, and they alone have the supreme and exclusive power, by a majority vote, to repeal it. It is not within the power of the Legislature to add to or take from, or in any manner infringe upon the law as adopted by the will of the voters—or even, in our opinion, repeal it in that particular locality. Whenever the law has been legally adopted by any particular locality, the subject has passed beyond the domain of Legislative action, so that a different law can not, without the sanction of the qualified voters of that locality, given in a legal manner, be imposed upon such locality.

Our view is that the amendatory act of July 4, 1887, in each and all of its provisions, was intended to and does operate only in localities which have adopted since it went into effect, or may hereafter adopt, local option in accordance therewith, and that said provisions can not and do not, and were not intended to, operate in localities which, prior to their going into effect, had voted upon and adopted the law as it was prior to such amendatory provisions. Any other view, it seems to us, would invade the constitutional rights of the people of such localities and foist upon them a law which, perhaps, they never would have adopted, a law with respect to which their "option" had never been consulted or ascertained; a law enacted not by them but by the Legislature, without constitutional right.

If we are correct in this view the position urged by the Assistant Attorney General that the amendatory act in question is merely remedial, having reference to procedure only, and that therefore the Legislature had power to enact it, is not maintainable, though in the abstract the principle is correct. We do not think the principle can be applied to the subject involved. But, conceding that the rule contended for could be applied to said act, then we are clearly of the opinion that the provision which we have been discussing, as well as some other provisions contained in said act, are not merely remedial provisions, or provisions pertaining only to procedure, but are provisions affecting

the subject matter, and changing very materially the very sub-
stance of the law, substituting an essentially different law from
the one adopted by the people.

We have not had the benefit of any authorities bearing upon
the questions we have discussed.   Counsel have cited us to
none, and we presume there are none, at least none in point, as
we are not aware of any other State having a constitutional pro-
vision or statutes similar to ours upon the subject of local
option.   Our conclusions are arrived at solely from a considera-
tion of what we understand to be the meaning the constitutional
provision which we have quoted; that is, that the Legislature
has no power whatever with respect to local option in localities
in which the qualified voters have exercised their constitutional
right to pass upon the subject, in accordance with the law then
existing.

We hold, therefore, that the people of Erath county had the
right to repeal the local option law in that county, at the time
and in the manner they did, and, therefore, there being now no
law in force under which the judgment in this case can be
enforced, said judgment is reversed and this prosecution is dis-
missed.   (Mulkey v. The State, 16 Texas Ct. App., 53.)

*Reversed and dismissed.*