Ex Parte G. H. Hollingsworth.

No. 5027. Decided May 22, 1918.

1.—Zone Law—Intoxicating Liquors—Constitutional Law—Police Regulations.

The Act of the called session of the Thirty-fifth Legislature, known as the ten-mile zone law, and which provides that from and after April 15, 1918, it shall be unlawful for any person in time of war between the United States and any other nation or country to sell, barter, or exchange any spirituous, vinous, or malt liquors or medicated bitters capable of producing intoxication, within

ten miles of any part of the land or buildings occupied or controlled by the government of the United States, or any department thereof, and used as a fort, arsenal, training camp, etc., is valid and constitutional. Davidson, Presiding Judge, dissenting.

### 2.—Same—Act of Congress—Statutes Construed—No Conflict.

The section of the Act of the called session of the Thirty-fifth Legislature making it a violation of the law to sell, barter, or exchange any spirituous, vinous, or malt liquors, etc., within ten miles of any place where soldiers are or may be hereafter camped, etc., in its application to the locality in which the offense took place, is not inhibited by the Act of Congress, Chapter 15, First Session of the Fifty-sixth Congress, page 76, approved May 18, 1917, or the order of the President thereunder.

### 3.—Same—Military Power—State Legislation—Congress.

The State possesses no military power further than that given by the Constitution relating to its militia and to repel invasions; the war and military power is vested in the Congress of the United States, but the State possesses the power to regulate intoxicating liquors within its domain, and this is exclusive of the power of the Congress of the United States, save to the extent that regulations on these subjects may be necessary in the exercise of some other power vested in the Congress by the Constitution of the United States.

### 4.—Same—Power of the State—Order of the President.

The power of the State, through its constitutional and legislative methods of regulation of the sale and use of intoxicating liquors, obtains throughout the State, excepting so far as it may be modified or superseded by the President's order made as incident to the enforcement of the power of Congress over its armies.

### 5.—Same—Interstate Commerce—Police Power of the State.

There is a distinction between the power under the interstate commerce laws, where the power of Congress is exclusive, and a regulation of Congress incidental to its military power affecting the subject of intoxicating liquors peculiarly within the domain of State legislation. Following Savage v. Jones, 225 U. S., 501.

### 6.—Same—United States and State Authorities—Regulation—Jurisdiction.

The extent to which the President has deemed it necessary and advisable to make regulations prohibiting the use of alcoholic liquors near military camps is embraced in his order establishing the zone around military camps, and this has not ousted the State from its jurisdiction of the remainder of its domain nor annulled therein the State prohibition law, and military regulations of alcoholic liquors is not exclusive of the State's police power on the subject. Davidson, Presiding Judge, dissenting.

### 7.—Same—Questions Not Decided—Co-existing Authorities.

The question of whether the Federal rule and the law of this State, with reference to regulations of alcoholic liquors can coexist and be enforced in the same territory, is not involved and not decided, it appearing that the alleged offense was not committed within the Federal zone.

### 8.—Same—Constitutional Law—Regulation—Prohibition.

That part of the Act of the called session of the Thirty-fifth Legislature under which relator is prosecuted for the sale of the liquor complained of as applied to the place at which the sale is charged to have occurred, is not a prohibition of the sale of intoxicating liquors in conflict with section 20, article 16, of the State Constitution, but a regulation of said sale, and the legislative

power to prohibit having never been asserted has not been determined by the courts. Davidson, Presiding Judge, dissenting.

### 9.—Same—Sale of Intoxicating Liquors—Non-prohibition Territory.

Laws regulating the sale and use of intoxicating liquors in districts of the State where the sale was not prohibited under the local option law have been enacted by the Legislature in great variety and number, and in many instances their validity has been passed on by the courts, and the Legislature has been held to be authorized to empower a city council by special charter to prescribe the boundaries and limits of such districts in non-local option territory within which the sale of liquor shall be prohibited by law. Following Ex parte Abrams, 56 Texas Crim. Rep., 565. Davidson, Presiding Judge, dissenting.

### 10.—Statutory Law—Judicial Construction—Constitutional Law—Presumption.

While the Legislature would have no right to pass a law conflicting with the constitutional provisions, express or implied, on the supposition that it possessed such power as a war measure, yet the judicial knowledge of the courts that the country is at war, etc., may be considered in aid of the legal presumption in favor of the validity of laws in determining the reasonableness of the exercise of the police power. Davidson, Presiding Judge, dissenting.

### 11.—Same—Constitutional Guaranties—Privilege—Intoxicating Liquors—Case Stated.

The Constitution affords the relator no guaranty of the privilege of, selling intoxicating liquors in any specified locality in the county of the prosecution, nor in any particular portion of any of its political subdivisions or defined districts; nor has he shown that his authority to sell these liquors therein in which the sale thereof is permitted under the license laws is unreasonably abridged. Davidson, Presiding Judge, dissenting.

From Tarrant County.

Original habeas corpus proceedings asking release from arrest for a violation of the so-called "ten-mile zone law" under Act of the Fourth Called Session of the Thirty-fifth Legislature.

The opinion states the case.

*Leonard M. Levy* and *McLean, Scott & McLean,* for relator.—Cited authorities in opinion.

*B. F. Looney,* Attorney General, *E. B. Hendricks, W. A. Keeling,* and *C. M. Cureton,* Assistant Attorneys General, for the State.—Cited Selective Draft cases, 245 U. S. (advance sheet), pp. 377-378; Ex parte Coupland, 26 Texas, 387.

On question of police power: Ex parte Abrams, 56 Texas Crim. Rep., 465, and cases cited in opinion.

MORROW, JUDGE.—Relator, restrained under a complaint charging, in substance, that he sold intoxicating liquors in Tarrant County, in time of war between the United States and the German Empire, within ten miles of a United States military camp designated as Camp Bowie, seeks release by original application for habeas corpus on the ground that the Act of the Legislature upon which the prosecution is based is

in conflict with the State Constitution, and is also in conflict with the law of Congress.

The section of the Act of the Texas Legislature involved is as follows: "From and after April 15, 1918, it shall be unlawful for any person in time of war between the United States and any other nation or country to sell, barter or exchange any spirituous, vinous, or malt liquors, or medicated bitters capable of producing intoxication, within ten miles of any part of the land or buildings occupied or controlled by the government of the United States, or any department thereof, and used as a fort, arsenal, training camp, quarters, or place where soldiers are, or may hereafter, be camped, stationed, or quartered; aviation field or school where soldiers, sailors, marines, or aviators are being quartered, drilled, or trained for service in any branch of the United States army or navy, except as herein provided."

Section 5 of the Act makes a violation of the provisions of the Act a felony, punishable by confinement in the State penitentiary for a term of not less than two nor more than five years, without the benefit of the suspended sentence.

The application, after charging that the relator is held by the sheriff of Tarrant County, on a warrant issued by reason of the complaint mentioned and setting out the constitutional provisions with which it is charged to be in conflict, contains the following: "Relator further shows to the court that that portion of Tarrant County, Texas, wherein the offense is alleged to have been committed, has not heretofore adopted local option and the sale of liquors has been lawfully pursued therein for many years continuously up to and including the 15th day of April, 1918, and but for the inhibition of said Act above referred to, such acts were and are lawful." No other facts are set out or proved, but those alleged are conceded to be true.

The Act of Congress is Chapter 15, First Session of the Sixty-fifth Congress, page 76, approved May 18, 1917, entitled "An Act to authorize the President to increase temporarily the military establishment of the United States." Section 12 of the Act contains the following: "That the President of the United States, as commander in chief of the army, is authorized to make such regulations governing the prohibition of alcoholic liquors in or near military camps and to the officers and enlisted men of the army as he may from time to time deem necessary or advisable." This section also declares a violation of such regulations if made would be a misdemeanor, punished with a fine not exceeding $1000 or imprisonment for not more than twelve months, or both.

Pursuant to this authority the President of the United States made an order that alcoholic liquor shall not be sold, given, served, delivered or shipped into the zone created as follows:

"1. There is hereby established a zone five miles wide, circumjacent to the boundaries of every military camp (except that within the existing limits of an incorporated city or town the zone shall not include

any territory more than one-half mile from the nearest boundary of such camp)."

From a careful investigation of the subject we state the conclusion that the section of the Act of the Legislature upon which the prosecution is founded, in its application to the locality in which the alleged offense took place, was not inhibited by the Act of Congress, nor the order of the President thereunder. The Act of Congress rests upon the clause of the United States Constitution granting power to raise and maintain armies, and upon that subject is supreme and exclusive of State authority. The State possesses no military power further than that given by the Constitution relating to its militia and to repel invasion. The war and military power is vested in Congress. U. S. Const., art. 1, sec. 8; Tarball's case, 13 Wall., 397; U. S. Const., art. 4, sec. 4. The State possesses the power to regulate intoxicating liquors within its domain, and this is exclusive of the power of Congress save to the extent that regulations on the subject may be necessary in the exercise of some other power vested in Congress by the Constitution. Cooley, Const. Lim., 7th ed., p. 834; U. S. v. DeWitt, 9 Wall., 41. Applied to the present matter, the power of the State, through its constitutional and legislative methods of regulation of the sale and use of intoxicating liquors, obtains throughout the State except in so far as it may be modified or superseded by the President's order made as an incident to the enforcement of the power of Congress over its armies. The analogy of the rules declared by the Supreme Court of the United States applicable to the power of Congress over the subject of interstate commerce to the exercise of the power involved in this proceeding is not complete. The cases of Leisy v. Hardin, 135 U. S., 100; Railway Co. v. Washington, 222 U. S., 370; Railway Co. v. New York, 233 U. S., 671, and numerous others cited by relator, declare the power of Congress over the subject of interstate commerce exclusive, and that when Congress acts all State laws touching interstate commerce are superseded, and in instances the inference from inaction by Congress leads to the same result.

Unlike the subject of intoxicating liquors upon which the State's power is complete, regulation of interstate commerce is not within the scope of the police power of the State. There appears to be a distinction between the power under the interstate commerce clause, where the power of Congress is exclusive, and a regulation of Congress incidental to its military power affecting the subject of intoxicating liquors peculiarly within the domain of State legislation. Even in the construction of police regulations of the State, which incidentally indirectly affect interstate commerce, the rigid rule applied in the cases cited by relator is not enforced. Savage v. Jones, 225 U. S., 501. Illustrative is the expression of the Supreme Court in upholding a police regulation with reference to diseased cattle which incidentally affected the subject of interstate commerce, upon which there existed a Federal statute. The court said:

"This question must, of course, be determined with reference to the settled rule that a statute enacted in execution of a reserve power of the State is not to be regarded as inconsistent with an Act of Congress passed in the execution of a clear power under the Constitution, unless the repugnance or conflict is so direct and positive that the two Acts can not be reconciled or stand together." Railway Co. v. Haber, 169 U. S., 613.

So in the case of Reid v. Colorado, 187 U. S., 137, making a similar ruling, the court said:

"It should never be held that Congress intends to supersede or, by its legislation, suspend the exercise of the police powers of the States even when it may do so, unless its purpose to effect that result is clearly manifested. This court has said—and the principle has often been re-affirmed—that, in the application of this principle of supremacy of an Act of Congress in a case where the State law is but the exercise of a reserve power, the repugnance or conflict should be direct and positive so that the two Acts could not be reconciled or consistently stand together."

Other Federal authorities are Silz v. Hesterburg, 211 U. S., 310; McLean v. Railway Co., 203 U. S., 38; Atlantic Coast Co. v. Wharton, 207 U. S., 328; Railway Co. v. Ubanks, 181 U. S., 420; Ashbul v. Kansas, 209 U. S., 231.

The Act of Congress is indicative of the intent to regulate the prohibition of alcoholic liquors near the military camps and to officers and enlisted men of the army as deemed necessary and advisable by the President. The extent to which the President has deemed it necessary and advisable to make such regulations is embraced in his order establishing a zone around military camps. This order, we think, is expressive of the extent to which Congress has entered the legislative field of and control of intoxicating liquors. It has not by entering the field to this limited extent, as incidental to the enforcement of the power granted by Congress to raise and maintain armies, ousted the State from its jurisdiction of the remainder of its domain, nor annulled therein the prohibition laws enacted under the local option clause of the Constitution, nor the regulations in non-prohibition territory prescribed by statute. Savage v. Jones, supra.

Section 13 of the same Act of Congress is the same, in substance, as section 12, supra, save that section 13 authorizes the military authorities to prohibit bawdy houses near military camps. An order establishing a zone within which such prohibition was effective was before the Federal court in Ohio, and from the opinion we quote the following:

"That the State in the exercise of its police power has the right to legislate, and in pursuance of that right has legislated, to control the morals of its citizens, and may prosecute the keepers of bawdy houses, is freely conceded; but their conviction and sentence for that offense in the State court, had action been taken against them there, would not bar prosecution in this court. Cross v. North Carolina, 132 U. S.,

131, 10 Sup. Ct., 47, 33 L. Ed., 287; Sexton v. California, 189 U. S., 319, 323, 23 Sup. Ct., 543, 47 L. Ed., 833; Byrne, Fed. Crim. Proc., sec. 211. The attitude of the government is that Congress, not in the exercise of the police power, but in the exercise of the war power conferred upon it by the Federal Constitution, may also, as a matter of right, prohibit the presence of such places within the prescribed territory without encroaching on the jurisdiction of the State." United States v. Casey, 247 Fed. Rep., 365.

We refer to the above as emphasizing the view that the military regulation of alcoholic liquors is not exclusive of the State's police power on the subject. The question of whether the Federal rules and this State's law can coexist and be enforced in the same territory, is not involved, and not decided, it appearing that relator's alleged offense was not committed within the Federal zone.

We are also of the opinion that that part of the Act of the Legislature under which relator is prosecuted for the sale of the liquor complained of, as applied to the place at which the sale is charged to have occurred, is not a prohibition of the sale of intoxicating liquors in conflict with section 20, article 16, of the State Constitution, but a regulation of the sale consistent with and supported by the numerous authorities in this State interpreting the power of the Legislature to regulate the sale of intoxicating liquors in localities where the sale is not prohibited under said article of the Constitution. Ever since the Constitution of 1876 was adopted the prohibition law has been made effective under the local option laws in counties and districts deciding, by vote, to put it in force, and in the remainder of the State the sale of intoxicating liquor has been conducted under laws regulating it. The legislative power to prohibit having never been asserted, has not been determined by the courts.

The decisions of this and the Supreme Court of the State relating to the subject deal with the two phases mentioned, namely, first, defining the limits of legislative authority over the subject in subdivisions of the State which by vote have declared in favor of prohibition; and, second, those passing on the various acts enforcing the power of the lawmaking branch of the government to regulate the sale of intoxicating liquors in those parts of the State where its sale has not been prohibited under the local option clause of the Constitution.

In the first class mentioned are found the cases relied on by relator to sustain his contention that the provision of the Act under which he is held is an attempt to exercise a power not possessed by the Legislature by reason of the restrictions upon its power coming from section 20, article 16, of the Constitution, which is as follows:

"The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town, city (or such subdivision of a county as may be designated by the Commissioners Court of said county), may by a majority vote, determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

He cites Holley v. State, 14 Texas Crim. App.; 516; Dawson v. State, 25 Texas Crim. App., 670, 8 S. W. Rep., 820; Ex parte Brown, 38 Texas Crim. Rep., 295, 42 S. W. Rep., 554; Stephens v. State, 73 S. W. Rep., 1056; Lewis v. State, 58 Texas Crim. Rep., 351, 127 S. W. Rep., 808; State v. Texas Brew. Co., 157 S. W. Rep., 1166.

Holley's case was one in which the court held a statute invalid which authorized the qualified voters of a subdivision of a county to prohibit the sale, exchange or "gift" of intoxicating liquors for the reason that section 20, article 16, of the Constitution only authorized the people in a local option district to determine whether the "sale" of intoxicating liquor shall be prohibited.

In Dawson's case, supra, the question arose upon this state of fact: when the local option law was put in effect the statute covering it provided that it might be repealed by vote of the people after one year. Subsequently the Legislature amended the Act providing that the election for its repeal could not be held until the expiration of two years. An election was held within less than two years, resulting against prohibition. Dawson was discharged by the court on his contention that the election resulting against prohibition repealed the law in the territory involved, holding that the Legislature was without power to change by amendment the time within which the repeal could take place after prohibition had been adopted. From the opinion we quote as follows:

"Our view is that the amendatory Act of July 4, 1887, in each and all of its provisions, was intended to and does operate only in localities which have adopted since it went into effect, or may hereafter adopt, local option in accordance therewith, and that said provisions can not and do not, and were not intended to, operate in localities which, prior to their going into effect, had voted upon and adopted the law as it was prior to such amendatory provisions. Any other view, it seems to us, would invade the constitutional rights of the people of such localities and foist upon them a law which, perhaps, they never would have adopted, a law with respect to which their 'option' had never been consulted or ascertained; a law enacted not by them but by the Legislature without constitutional right."

Ex parte Brown, 38 Texas Crim. Rep., 295, declared the Cold Storage Act void, an Act making it unlawful to keep intoxicating liquors for others on cold storage in districts where the sales were prohibited under the local option statute. The language of the court, in part, is as follows: "That provision inhibits the sale only and was evidently intended by the people to mark the limitation of power of the Legislature on that subject. The people, in saying that a sale of intoxicating liquors might be prohibited, deny to the Legislature the power to otherwise interfere with its use; and the Cold Storage Act was an attempted interference with the use of intoxicating liquors in local option territory, not authorized or warranted by the Constitution." See Ex parte Flake, 67 Texas Crim. Rep., 216, 149 S. W. Rep., 146.

Stephens' case, 73 S. W. Rep., 1056, held an Act of the Legislature

void, making it unlawful to give a prescription for intoxicating liquors in local option territory. It quotes and follows the Holley case, supra.

State v. Texas Brewing Co., supra, held an Act of the Legislature, levying a tax upon the pursuit of the business of taking orders for the sale of intoxicating liquors in prohibited territory, void upon the ground that under the facts of the case, taking orders would amount to a sale which, being prohibited in local option territory, could not be licensed. Judge Brown, writing the opinion, used the following language:

"All powers of government reside in the people, and the officials of the different departments exercise delegated authority; however, the Legislature can exercise all legislative power not prohibited by the Constitution. But the section of the Constitution quoted provides a method (a referendum) by which the voters of a given territory may exercise the sovereign power of legislating upon this subject, which places the law adopted by them above legislative authority, as if it had been embraced in the Constitution, and we must so consider the local option law adopted by the voters of Clay County, for that, like the Constitution, is the exercise of primary sovereignty; therefore, what is prohibited by the local option law, to be done in Clay County, as to sale of intoxicating liquors, can not be authorized by the Legislature to be done there."

In the Lewis case, 58 Texas Crim. Rep., 351, the previous cases cited were reviewed by Judge Ramsey, who wrote the opinion. The conclusion reached was that by reason of the judicial interpretation of the constitutional provision mentioned, and the subsequent implied adoption of that construction by legislative enactment, a statute making the penalty for a violation of the law prohibiting the sale of intoxicating liquors a felony would not operate in the district which adopted the prohibition when the penalty for its violation was a misdemeanor. Consequently, upon the interpretation of the Constitution given in the cases mentioned, the penalty for the violation of the local option law in the several counties of the State varies according to the status of the legislative enactment at the time that prohibition was adopted in the particular counties. Among other authorities on the subject are Ex parte Dupree, 101 Texas, 150; Dupree v. State, 122 Texas, 459; Segars v. State, 40 Texas Crim. Rep., 577; Ex parte Flake, 67 Texas Crim. Rep., 216, 149 S. W. Rep., 146; Johnson v. State, 75 Texas Crim. Rep., 177, 171 S. W. Rep., 211; Longmire v. State, 75 Texas Crim. Rep., 616, 171 S. W. Rep., 1165; Fitch v. State, 58 Texas Crim. Rep., 366.

The judicial view of the restrictive effect of section 20, article 16, of the Constitution, on the legislative power in districts in which the prohibition has been put in operation by vote of the people, shed only an indirect light on the power possessed by the Legislature in districts such as that in which relator is charged with offending, where such prohibition has not been put in effect under the local option law Laws regulating the sale and use of intoxicating liquors in districts of the State where the sale was not prohibited under the local option law, have been enacted by the Legislature in great variety and number and in many

instances their validity has been passed on by the courts. Illustrations are article 155 of the Penal Code relating to C. O. D. shipments, held valid in L. Craddock & Co. v. Wells Fargo Express Co., 125 S. W. Rep., 59. Article 630, P. C., prohibiting sales of intoxicating liquors on election days. See Anderson v. State, 39 Texas Crim. Rep., 34. Article 1054, P. C., prohibiting the sale or gift of such liquors to minors, upheld in Hogan v. State, 66 Texas Crim. Rep., 514. Articles 595 and 623, P. C., relating to sales of habitual drunkards. Article 630, P. C., relating to sales at religious assemblages, held valid. Keith v. State, 38 Texas Crim. Rep., 680.

The sale in the instant case took place in Tarrant County, within ten miles of Camp Bowie, at a place where the sale of intoxicating liquors is not prohibited under the local option law, and has been lawfully pursued up to the passage of the Act of the Legislature in question, which is the only inhibition against its sale making it unlawful. The case of Cohen v. Rice, 101 S. W. Rep., 1053, decided by the Court of Civil Appeals at Dallas, the Supreme Court denying writ of error, was one in which an application for mandamus was sought to compel the tax collector to issue Cohen a license as a retail liquor dealer. The City of Marshall was a place in which the sale of intoxicating liquors was permitted. The mandamus was refused because of an ordinance of the city made under legislative authority, which prohibited the issuance of license to any person to sell or give away intoxicating liquors in any part of the districts defined, the prohibited districts including about eight-ninths of the territorial limits of the city. It was urged that in these districts there was established prohibition, which it was claimed was available only under the terms of article 16, section 20, of the Constitution. The ordinance was sustained, the court using the following language: "The ordinance does not prohibit the sale of intoxicating liquors in the City of Marshall, but regulates the same in the city by confining the sale to the business portion of the city."

The principle announced in Cohen v. Rice, supra, has been accepted as sound and applied in numerous instances by this court, as in Ex parte King, construing a provision of the special charter of Fort Worth granting authority to prescribe saloon limits of said city. The court, holding the provision valid, used the following language: "The Legislature of this State is authorized to empower the city council by special charter to prescribe the boundaries and limits within which the sale of liquor shall be prohibited by law, and such local authorities may define and limit the area within which alone such sales may be lawful. This was distinctly ruled in the case of Cohen v. Rice, 101 S. W. Rep., 1052, by the Court of Civil Appeals of the Fifth Supreme Judicial District, in which case writ of error was refused by our Supreme Court. This is in accordance with and well settled by the authorities." Similar ruling was made with reference to an ordinance of the City of Dallas in Williams v. State, 52 Texas Crim. Rep., 371, and with reference to an ordinance of Texarkana in Ex parte Abrams, 56 Texas Crim. Rep.,

465. To the same effect is Garonzik v. State, 50 Texas Crim. Rep., 535, and LeGois v. State, 80 Texas Crim. Rep., 356. See also Paul v. State, 106 S. W. Rep., 448, and Andrews v. Beaumont, 113 S. W. Rep., 615.

We have some statutes and decisions applicable to non-local option districts prohibiting the sale of intoxicating liquors to certain persons in certain localities, and at certain times. This restriction is confined to a part of Tarrant County near United States military posts or camps during the war.

The conclusion that this is a regulation within the scope of the principle discussed in Cohen v. Rice, supra, and cases following it, is difficult to escape. The provisions reviewed in the case of Cohen v. Rice, supra, are stated in the opinion as follows:

"(1) In March, 1903, the Legislature of the State of Texas granted to the City of Marshall a special charter, and section 16 of article 1 of the city charter reads as follows: 'The city council shall have the power to prescribe by ordinance that no intoxicating liquors shall be sold or given away within the corporate limits of said city in any certain prescribed district in said corporation in which there are more resident than business houses, said districts to be accurately defined by said ordinance.' (2) The city council in June, 1906, adopted an ordinance under the above provisions of the city charter, defining the resident districts of the city, which ordinance provides that it shall be unlawful for any person, firm, or corporation, etc., to sell or give away any intoxicating liquors within any or either of the prescribed districts situated within the corporate limits of the said City of Marshall."

The effect of this ordinance was to withdraw a part of the territory of the City of Marshall from the operation of the laws in force in that city permitting the sale of intoxicating liquors under the license law, and to prohibit the sale of such liquors in the territory thus withdrawn. The effect of section 1 of the Act of the Thirty-fifth Legislature in question is to withdraw a part of the territory of Tarrant County from the operation of the laws permitting the sale of such liquors and to prohibit the sale of such liquors in the territory thus withdrawn. The analogy is obvious.

While as stated the Legislature would have no right to pass a law conflicting with the constitutional provisions, express or implied, on the supposition that it possessed such power as a war measure, the judicial knowledge of the court that the country is at war; that the State by large appropriations is aiding to the extent of preparing the militia for service in the Federal army; that at several points in the State of Texas the United States authorities have located military camps and cantonments, at which are concentrated large numbers of troops; that the conditions produced are abnormal to an extent that Congress has authorized, and the military authorities have adopted, stringent regulations with reference to alcoholic liquors and other sources of vice in the vicinity of these camps, may be considered in aid of the legal presumption in

favor of the validity of laws, in determining the reasonableness of the exercise of the police power of the State in the present instance.

The Constitution affords relator no guaranty of the privilege of selling intoxicating liquors in any specified locality in Tarrant County, nor in any particular portion of any of its political subdivisions or defined districts; nor has he shown that his authority to sell these liquors within the limits of the county, or within limits of any of the subdivisions or districts thereof, in which the sale of such liquors is permitted under the license laws, is unreasonably abridged by the enforcement of the regulation under consideration.

The application for writ of habeas corpus is dismissed.

*Dismissed.*

PRENDERGAST, Judge (concurring).—I hold the Act is valid as a necessary and reasonable regulation.

And I also hold it valid under the inalienable police power of the Legislature as straight prohibition in the prescribed zones, as a necessary aid to the successful prosecution of the war.

And I further hold there is no constitutional provision, State or national, which directly or by implication forbids or prevents it.

DAVIDSON, Presiding Judge (dissenting).—There are two propositions involved that I desire to mention, and incidentally discuss briefly: First, that the Act under consideration was intended to operate upon the military forces of the United States at training camps, forts, arsenals, ship yards and aviation camps as a regulation and discipline of their conduct and in their contact with the citizenship of Texas, and, therefore, it is a war measure, and expressly so stated in the Act itself, towit: that it was to last during the war and pass out of existence at the termination of that war. Second, that it is not a regulatory Act but one drastic in its action and purpose with reference to prohibiting the sale, shipment into the alleged zone, and use of intoxicating liquors by the military forces of the United States. Eliminating the military phase of it and its correlated connection, this law would have no standing in court for any other purpose. I, therefore, concur with Judge Morrow in the statement that the Legislature has no authority, express or implied, to enact the statute under consideration as a war measure, but I can not concur with him in his holding that the Act may be used as a police regulation. Police power of the State does not pertain to nor include war measures or the control in any way of the army and military matters of the United States. That belongs exclusively to the Federal government. The control of the army and all military laws and discipline pertaining to regulation and control of the army and its management and maneuvers were delegated to the Federal government by the State in the Federal Constitution. The State of Texas, therefore, has no authority to declare war or enact war measures. If it be used as a part of the police power, then we have in addition to the police

power an overriding military law, and that phase of government resorted to when the police power has failed, and thereby it becomes dominant over civil authority. This would be violative of article 1, section 24, of the State Constitution known as the Bill of Rights. It prescribes that "the military shall at all times be subordinate to the civil authority." Instead of the military controlling the police power of the government that power should be superior to the military in State matters as evidenced by this provision of the Constitution. See also State v. Sparks, 27 Texas, 705. That this is a war measure seems to be certain from the wording of the Act, which is shown throughout the entire bill from caption to emergency termination. That my personal views may not be substituted for the statute, quotations will be made from the Act. It is known as House bill No. 9. The caption provides:

"An Act to prevent and prohibit *in time of war* the sale, barter, or exchange of spirituous, vinous and malt liquors, or medicated bitters capable of producing intoxication, *within ten miles of any fort, arsenal, training camp, cantonment, aviation field or school* where soldiers, sailors, marines or aviators are being quartered, held or trained, or quartered, *or where ships are being built under contract with the government of the United States, in time of war,* in any branch of the army or navy of the United States." There are other matters mentioned in the enacting clause but they all pertain, as does that already quoted, to a state of war.

Section 1 of the Act provides that, "From and after April 15, 1918, it shall be unlawful for any person *in time of war between the United States and any other nation or country to sell,* barter or exchange any spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication, *within ten miles of any part* of the land or buildings occupied or controlled by the government of the United States," etc.

Section 2 provides, "It shall be unlawful for any person, firm or corporation, *in time of war between the United States and any other country,* to ship or transport by or over any common carrier, express, or service car, any spirituous, vinous or malt liquors, etc., into the zone or territory within ten miles of any part of the land or buildings occupied or controlled by the United States government or any department thereof," etc.

Section 2a provides: "It shall hereafter be unlawful for any person *in time of war between* the United States and any foreign country, to sell, barter, or exchange any spirituous, vinous or malt liquors, etc., *within ten miles* of any place used as a yard or place where ships are being built under contract with the government of the United States."

Section 3 provides: "It shall be unlawful for any person, *in time of war* between the United States and any other country, to carry, in any manner, any spirituous, vinous or malt liquors, etc., into the zone or territory *within ten miles of any part* of the land or buildings occupied or controlled by the United States government or any department thereof," etc.

Section 3 excepts out of the provisions the sale of wine for sacramental purposes and alcoholic liquors used as medicine, under circumstances prescribed in the Act.

Section 5 provides a penalty of not less than two nor more than five years for each separate violation of any of these provisions.

Section 6 provides for injunction proceedings.

Section 7 gives preference to cases arising under this Act to other cases on the docket.

Section 8 provides that if any section or part of this Act be held unconstitutional or invalid, such holding shall not affect any other portion of the Act. .

Section 9 is the emergency clause, and reads as follows: "Whereas, there are *many points in Texas where soldiers, sailors, marines and aviators are being trained for service in the army and navy of the United States,* near which liquor is being sold to the great injury and detriment of the morale and efficiency of said troops, there exists an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and that this Act become effective from and after April 15, 1918, and it is so enacted."

It will be noted from these quotations that the only reason for the enactment of this bill was to prohibit during the war between the United States and Germany the sale of intoxicating liquors in ten-mile zones around forts, camps, arsenals and ship yards to the soldiers within said ten-mile zone. It assigns no other reason and states no other proposition. This is interdicted by the Federal Constitution, for the Federal government has absolute control of the army and military matters to the exclusion of the State. This does not militate against the right of the State of Texas to repel invasion of its territory, but here there is no pretense of an invasion of Texas soil, or that the bill was enacted because of that reason. Every feature of the bill and word of it excludes that idea. The Act, therefore, may be stated in a general way to be a war measure, designed to control the military department of the United States army and navy and ship yards, and is a prohibition law of the most stringent and drastic form.

Judge Morrow is also correct in his statement that the bill as a war measure is not justified by either express or implied power in the State Constitution, or that might be exercised by the Texas Legislature. This would be placing the military above the civil authorities as well as an invasion of the power conferred upon the Federal government. It would be an attempted resumption of that delegated authority. As a general proposition it is here stated as a safe rule that no implied power exists unless it is preceded by or bottomed upon an express grant of authority. In this instance there was not only no express or implied authority for the enactment of this bill, but Texas by her deliberate act conferred that power upon the Federal government. This excludes State authority to declare war or to enact war measures. A discussion

of that subject would be here without any particular profit. That we are engaged in a great war is evidenced by the current history of the times, and this shows practically a war of world-wide proportions in which the government of the United States is taking a bold foremost position and entering into it with the strongest hand possible. The direction of these affairs has been confided to the Federal government with the President as commander in chief of the armies, and it is not the province of Texas to undertake to direct war measures. Military laws, therefore, belong to the Federal and not the State government. As before stated, this Act can not be justified as a war measure, and that being its only purpose, it is illegal and void.

The application for the writ of habeas corpus is dismissed and denied in Judge Morrow's opinion because, as stated, applicant failed to show as a fact that this as a police measure has deprived him of any right, and this statement is supported by citing authorities dealing with the question of restricted saloon districts in municipal corporations. Quite a number of these cases have been decided by this court and civil courts of Texas to the effect that municipal corporations may be endowed with power by legislative Act to create what is called "restrictive saloon districts" within the domain or territory covered by the respective charters. The writer does not believe these cases are in point. In all such charters, and they practically cover the cities of Texas, it will be noted that power was granted to pass ordinances restricting the sale of intoxicants within the corporate limits of the municipal boundaries to certain districts or portions of the territory of said municipality. That was but a regulation specified in the law itself and went with and was a part of the charter. This was justified by article 11, section 5, of the State Constitution. But in all of those laws and in all of those cases the proposition is asserted and supported that, first, there was a legal right to sell in the territory; second, the municipality was clothed with authority to select the limits in which it should be sold for better regulation and control. This bill has none of the features of regulation as specified in those cases. The law in this instance is a drastic prohibitory enactment. It nowhere authorizes the sale within the territory in or outside of a restricted district, but it bars all saloons and excludes every character of dealing with intoxicants inside of the territory mentioned, the ten-mile zone. This is totally unlike the matter discussed with reference to municipality of city charters and their authority to regulate. I can not, therefore, agree that this is a regulatory Act, or that it was incumbent upon the applicant to show that as a matter of fact the zone law was such restricted district. The statute makes it absolutely prohibitory and leaves no territory where the sale could be made. The applicant could not show facts that would bring him within the regulatory acts found in the city charters and discussed by the courts in the many opinions cited by Judge Morrow because not authorized by the terms of the Act. A broad distinction is to be observed between the regulatory acts discussed in the opinions

cited by Judge Morrow with reference to city charters and restricted saloon districts and absolute prohibitory law covering all the territory with no authority to sell as found in this Act.

I have not had time since the opinion was written to go at length into these matters, and, therefore, merely state what I have stated hurriedly and not concisely but rather crudely in support of the two propositions announced in the beginning of the dissenting opinion. I, therefore, conclude that this was intended to operate as a military law or statute pertaining and confined to the war as a measure and the surrounding forts, training camps, aviation schools, and ship yards, and it was enacted for no other purpose except as a drastic and stringent prohibitory law with reference to intoxicants in that connection. I also agree with Judge Morrow, as I understand his opinion, that had this been a local option law there could not have been any restricted saloon districts within the territory mentioned. That would be a correct conclusion, yet this Act is more drastic than the local option law and consequently decidedly more prohibitory in its provisions. The same territory covered by the local option law would exclude the zone law. Of this there seems to be no diversity of opinion, at least there ought not to be. I also conclude that the measure is a drastic prohibitory law and enacted under the guise of a war measure to prevent the sale, exchange and shipment into the territory of intoxicants, and that it is a clear invasion of our constitutional provision with reference to local option laws, and intended to operate outside of and superior to that constitutional section.

I, therefore, respectfully submit that the applicant ought to have been discharged from custody.