### EX PARTE LEWIS HOPKINS.

#### No. 3352.   Decided December 16, 1914.

**1.—Local Option—Allison Act—Habeas Corpus.**

Where relator was charged with a violation of what is known as the Allison Act passed at the Called Session of the Thirty-third Legislature, etc., and when arrested, sued out an original writ of habeas corpus before this court, and the agreed statement of facts showed that the relator as a friend and agent bought for and carried a bottle of whisky to his friend residing in prohibition territory, with the money of said friend, who wanted it for his individual use, and not for any illegal purpose, he was guilty of no offense, and is discharged from custody.   Prendergast, Presiding Judge, dissenting.

**2.—Same—Constitutional Law—Statutes Construed.**

Where relator was arrested for a violation of the so-called Allison Act, passed by the Called Session of the Thirty-third Legislature, and the facts showed on writ of habeas corpus that he bought the intoxicating liquor as agent of a friend who lived in prohibition territory with the money of said friend who wanted it for individual use, and not for any illegal purpose, he is guilty of no offense.   Davidson, Judge, holding that if said Act intends to prevent shipments of liquor when not intended for illegal purposes, the same is clearly void, and that the Act is unconstitutional for several reasons.   Harper, Judge, concurring in the discharge of the relator, but not agreeing that any of the provisions of said Act are unconstitutional.   Prendergast, Presiding Judge, dissenting from the view of the majority in discharging relator.

From Tarrant County.

Original habeas corpus proceeding asking release from a warrant of arrest based upon a complaint that relator transported, carried and delivered intoxicating liquor from a territory where its sale is permitted to territory where its sale is prohibited by law.

The opinion states the case.

*Capps, Cantey, Hanger & Short* and *Jno. T. Smith,* for relator.— Relator had a complaint filed against him charging him with violating section 4 of what is known as the Allison Act (p. 62, First Called Session Thirty-third Legislature) ; that he did carry and deliver to Jim Sherrod one quart of whisky, the said Jim Sherrod living in prohibition territory.

The agreed facts show that relator and Sherrod live in Justice Precinct No. 8, Tarrant County, Texas; that prohibition is in force in said precinct and the sale of intoxicating liquors prohibited therein by law. No contest is made that such law is not in legal force and effect in said precinct.   Relator having business in the city of Fort Worth, in Precinct No. 1, in Tarrant County, where the sale of intoxicating liquors

is permitted and licensed by law, his friend, Jim Sherrod, approached him, gave him the money and requested relator to buy for him, Sherrod, a quart of whisky and bring it to him on his return home [which he did]; that said liquor was intended by Sherrod for his own personal use and was not intended to be sold or used by Sherrod in violation of any law of this State. These facts are admitted and are in no way questioned.

On question that shipment of intoxicating liquors from one State into another State comes within the protecting provisions of the interstate commerce clause, and that so far as Congress has prohibited its shipment from one State into another, a State by its laws can not prohibit such shipment, transportation and delivery when intended for personal use of the consignee: Van Winckle v. State (Del.), 81 Atl., 385; Armor v. Sou. Express Co. (Tenn.), 165 S. W. Rep., 236; Sou. Express Co. v. State (Ala.), 66 So., 115; State v. U. S. Express Co., 145 N. W. Rep., 451; State of Kansas v. Doe, 139 Pac. Rep., 1169.

On question of unconstitutionality of Allison Act: Holley v. State, 14 Texas Crim. App., 505; Stallworth v. State, 16 id., 345; Steele v. State, 19 id., 425; Brown v. State, 42 S. W. Rep., 554; Bottoms v. Steele, 73 S. W. Rep., 16; Stephens v. State, 73 S. W. Rep., 1056; Ex parte Massey, 92 S. W. Rep., 1086; Dupree v. State, 102 Texas, 455; State v. Texas Brewing Co., 157 S. W. Rep., 1166, and cases cited in opinion.

*C. E. Lane*, Assistant Attorney General, and *Marshall Spoontz*, County Attorney, for the State.

DAVIDSON, JUDGE.—Applicant was arrested for violating what is known as the Allison Act, found on page 62 of the Acts of the Called Session of the Thirty-third Legislature.

Applicant as a friend and agent bought for and carried a bottle of whisky to his friend, bought with the money of his friend, who wanted it for his individual use and not for any illegal purpose. This constitutes the agreed case. It is unnecessary to give further details. In what I shall have to say I will not discuss the general police power of the Legislature.

The Allison Act, as it is called, provides, in sections 2, 3 and 4, that "Except as otherwise provided in this Act it shall be unlawful for any person, firm or corporation, or any officer, agent or employe thereof in this State" to deliver, receive, transport, or carry any intoxicating liquors to any other person, firm, corporation, or any agent or employe thereof in this State.

It is provided in section 5 of the Act, that it shall be unlawful for any of these parties living without the State of Texas to convey to anyone in Texas intoxicants into local option territory when such intoxicating liquors are intended by any person interested therein to be received, possessed, sold or in any manner used in violation of any law of Texas.

Section 6 provides it shall be unlawful to solicit in local option terri-

tory or take orders for intoxicating liquors in said territory. Then follows those acts which are said in the Act to be not unlawful.

Section 7 provides that certain parties shall not be prohibited from receiving alcohol for use of his or their business. This applies to educational and eleemosynary institutions, and manufacturers and their employees as well as druggists, provided its use shall be confined to the business and institutions mentioned.

Section 8 provides as follows: "Nothing in this Act shall make it unlawful for any person licensed or authorized under the laws of this State to sell spirituous, vinous or malt liquors, to ship, transport, carry or deliver such liquors to any person within the limits of the territory wherein the sale of intoxicating liquors is permitted under the laws of this State."

Section 8a permits the parties to make wine from their own grapes and to ship under circumstances mentioned in that section.

Section 9 provides it shall not be unlawful for any person for the use of himself or members of his family residing with him to personally carry such liquors.

Section 10 provides that it shall not be unlawful for any person, firm or corporation, etc., to ship, transport, carry or deliver intoxicating liquor to any person authorized or licensed under the laws of this State to sell spirituous, vinous or malt liquors (including dealers licensed and authorized under the laws of this State to sell such liquor for medicinal purposes on prescription in local option territory; and section 11 authorizes priests and ministers to ship when used for sacramental purposes in quantities of one gallon or less). These are provisions of the Act thought necessary to be noticed.

So it will be seen by sections 2, 3 and 4 that it is unlawful to ship, transport or carry intoxicating liquors between points in Texas. This applies to the State generally, except as otherwise provided in the Act. Sections 7, 8, 8a, 9 and 10 provide instances in which it is not unlawful to carry or transport intoxicants. So we have it, that the Legislature has provided certain things shall be unlawful, and certain things shall not be unlawful. If the Act had remained as sections 2, 3 and 4 provided, if they are legal and constitutional, intoxicating liquors could not be transported from one point to another point in Texas under any circumstances, but when we go to the other sections we find that it is lawful to ship intoxicating liquors under certain circumstances and for certain purposes. By the terms of section 8 it is not unlawful for any person licensed or authorized under the laws of this State to sell spirituous, vinous or malt liquors, to ship or transport or carry or deliver such liquors to any person within the limits of the territory wherein the sale of intoxicating liquors is permitted under the laws of this State. As we understand the laws as they apply to the sale of intoxicating liquors, there is no point in Texas where intoxicating liquors may not be sold under some circumstances. In local option territory it is permitted to be sold under certain circumstances. It may there be sold under a license system on prescription, which is recognized by section 10

of the Allison Act to be an existing law, and wine may there be sold for sacramental purposes. So whether it be local option or anti-local option territory, it is *permissible* to sell under circumstances mentioned in the different statutes at any point in the State. It will be noticed that section 8 does not say the parties must have taken out the license either in wet or dry territory, but if the sale is *permitted* under the laws of the State, the shipment under the Allison Act can occur. The permission to do a thing is one thing; doing the thing permitted is another thing. It would seem from the terms of this section that a party may ship from one point in Texas to another point in Texas if in that territory the sale of intoxicating liquors is *permitted*. This law authorizes the shipment of intoxicating liquors from any point in Texas to any other point in Texas, and the mere fact that the parties have not taken out license to sell does not abrogate the law granting permission to do so. The writer has always concurred fully in decisions which hold that when the local option law is put into effect, it supplants all other means of regulating the sale of intoxicating liquors in local option territory. This has been the law in Texas until recently since the rendition of the Robertson case in 5 Texas Crim. App., 155. Therefore, following this line of jurisprudence, the writer dissented in the Snearly case, and has dissented whenever there had been a departure from that rule. There is a line of decisions in which I have not concurred, to the effect that the Legislature may prevent the storing of whisky in local option territory and authorize its seizure if stored for the purpose of illegal sale. This seems to find its support in the general proposition that this can be done in aid of the local option laws. It has never been held, as I understand, in any of the cases, that the Legislature was empowered to go further, even in local option territory, than to prevent the use of intoxicating liquors for any purpose except that connected with illegal selling, either as selling in fact or preparatory thereto. It has never been held that it was a violation of the law to store intoxicants in local option territory for the purpose of selling on prescription, or of selling wine for sacramental purposes, or for one's individual use, and no decision has been called to the writer's attention, and he believes none exists, that prevents parties in local option territory from giving whisky to others than minors. The question has come before the court as to whether or not the local option law took the place of the law prohibiting gift to minors, and it was held that it did not. In that connection it has been held that a charge could not be sustained of selling to minors under that statute, but the prosecution for such sale must be had under the local option laws, whether the sale was to a minor or to an adult. The Allison Act recognizes these conditions expressly by its terms. If the intoxicants can be shipped into local option territory because the sale is permitted under the circumstances indicated, then it would not be unlawful to so ship under the provisions of the Allison Act. If it is not shipped for unlawful selling, then section 8 of the Allison bill authorizes such shipment. If the intoxicants are shipped into such territory, when *permitted* to be there sold, the Legislature can not require

the purchaser to go after the intoxicants. He may ship it. He may sell on prescription, and may ship it for this reason and for the several reasons set out in the Act, or he may ship it for himself. If the Act intends to prevent shipments when not intended for illegal purposes, it is clearly void. The citizen has the right to ship not only intoxicants for lawful purposes but anything that is not prohibited. It may be shipped by any means of transportation, whether public or private. The law does not concern itself, and ought not to concern itself, as to how the party should have intoxicants conveyed to him when he has a right to have the intoxicants. Such laws would be absolutely vexatious and tyrannical, and even beyond the reach of the police power. This Act recognizes the fact that the citizen is entitled to have intoxicants for his own and the use of members of his family, but undertakes to curtail these rights by saying that he must himself carry the intoxicants, and that he will not be permitted to ship it to himself. The law could not prohibit him from having the whisky for his own use, and even under the decisions prohibiting the storing of intoxicants for illegal sales he would not be prohibited from shipping intoxicating liquors for his own use by public conveyance or common carriers or by private agents. The Legislature can not prohibit a citizen of Texas from using the common carriers' systems of the State, or of employing agents to do legitimate things, even to the carrying of intoxicants when the use of those intoxicants is not illegal. The party may do by an agent what he may do by himself. There is nothing to indicate that the agent is criminal, and in fact it would be a different proposition to sustain under such circumstances. If the agent was criminal in carrying the intoxicants, the principal would also be criminal. The agent obtains his authority to act from the principal, and it would seem rather clear to the ordinary mind that an agent could not usually be guilty for doing a thing of which the principal would be innocent. It is well recognized that there may be agency in criminal matters as well as in civil. In one it is innocent, and in the other criminal. Among the most familiar illustrations of the guilty agency is that of the accomplice to the crime committed by the principal, but before there can be an accomplice there must be a principal, and there must be a crime committed by the principal. In other words, the principal must commit the crime before there can be an accomplice.

I therefore conclude without further discussion that the citizen of Texas has a right to transport to himself or have transported to himself intoxicating liquors by any one of the means that is open to the public or to his private will or contract. If this law is to be construed otherwise, then it is void and in derogation not only of common right, but is violative of the constitutional privileges of the citizen.

I have not discussed other constitutional phases, but I believe the Act unconstitutional for several reasons.

Taking this view of the matter, relator is ordered discharged.

*Relator discharged.*

PRENDERGAST, PRESIDING JUDGE.—I respectfully dissent. For my views I refer to my dissenting opinions in the Longmire case this day decided in an opinion by Judge Harper, and the Peede case, 170 S. W. Rep., 749.

HARPER, JUDGE.—In concurring in the discharge of the prisoner I do not agree that the Allison Law or any of its provisions are unconstitutional, but think, properly construed, it is valid, and prohibits the transportation, shipment, carriage and delivery of intoxicating liquors in prohibition territory for illegal sale or any other illegal purpose. For full expression of my views, see Longmire v. State, this day decided, and if deemed advisable, I may later amplify those views in my opinion in this case.