## EX PARTE A. M. FULTON.

### No. 5337.　Decided May 14, 1919.

#### Dissenting opinion filed October 25, 1919

1.—Habeas Corpus—Having and Keeping Intoxicating Liquors and Transporting Same in Prohibition Territory—Constitutional Law.

The Act of the Thirty-third Legislature known as the amended Allison shipping law, embodied in chapter 67, Acts of the Thirty-third Legislature, and chapter 31, Acts of the Thirty-fifth Legislature, fourth called session, making it unlawful to have or keep intoxicating liquors in a public road, etc., in prohibition territory and prohibiting the transportation of such liquors in such territory, etc., is valid and constitutional. Davidson, Presiding Judge, dissenting.

2.—Same—Statutes Construed—Statewide Prohibition—Allison Shipping Law—Concurrent Acts of Legislature—Rule Stated.

The contention that chapter 24, Acts of the Thirty-fifth Legislature, fourth called session, known as the statewide prohibition law conflicts with the Allison Shipping law, embodied in chapter 67, Acts of the Thirty-third Legislature, and chapter 31, Acts of the Thirty-fifth Legislature, fourth called session, is not well taken, and the Allison shipping and transportation law prevails in such territory to which it applies over any provisions in chapter 24, supra, upon the same subject, under the rule that Acts of the same session of the Legislature must be taken and construed as one Act. Following Jolif v. State, 53 Texas Crim. Rep., 61. Davidson, Presiding Judge, dissenting.

3.—Same—Constitutional Law—Statutes Construed.

While section 20, article 16 of the Constitution of the State of Texas is restrictive of the method of prohibiting sales of intoxicating liquors, such restriction is not extended to prevent the Legislature in aid of the Enforcement of the prohibition against sales of intoxicating liquors. Distinguishing Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100. Following Schwulst v. State, 52 Texas Crim. Rep., 427, and other cases. Davidson, Presiding Judge, dissenting.

**4.—Same—Constitutional Law—Decisions of Other States.**

Many of the States of the union having provisions in their Bill of Rights substantially like ours have passed laws similar to that in question here, that is the forbidding the keeping of intoxicating liquors in public places in localities where the sale of such liquors was prohibited, and limiting the transportation of such liquors into such territory, which has been sustained by the said State courts and the Supreme Court of the United States. Following Crane v. Campbell, 245 U. S. 308, and other cases.

**5.—Same—Case Stated—Constitutional Law—Other Decisions—Precedent.**

In the absence of some provision of our own Constitution which would render inapplicable the decisions in other jurisdictions, this court is not warranted in holding that the Legislature of Texas is impotent to pass a valid law prohibiting the owner of whisky from having or keeping it in a public road or place where its sale is prohibited, or to prohibit his carrying it into such territory except for certain purposes. Following: Longmire v. State, 75 Texas Crim. Rep., 616, and other cases. Davidson, Presiding Judge, dissenting.

**6.—Same—Proclamation by Governor—Constitutional Law.**

The suggestion made by relator that under section 40, article 3, of the Constitution of Texas, the Act amending chapter 67, Act Thirty-third Legislature, was passed at a special session of the Legislature was void because not embraced in the subject upon which the Legislature under the proclamation and messages of the governor was permitted to consider the same is not tenable. Davidson, Presiding Judge, dissenting.

**7.—Same—Proclamation by the Governor—Rule Stated.**

It is not contemplated that the Governor shall state the details of legislation in order to give the Legislature jurisdiction to consider it at a special session. He must submit the subjects, but the methods are within the discretion of the Legislature. Following: Long v. State, 58 Texas Crim. Rep., 209 and other cases; besides, the offense charged is within the purview of chapter 67, Acts Thirty-third Legislature. Following: Ex parte McKay, 199 S. W. Rep., 637.

**8.—Same—Habeas Corpus—Practice on Appeal—Pleading.**

In the absence of a statement of the facts, the application for writ of habeas corpus is a mere pleading and proves nothing, and for this reason the application must be dismissed.

From Dallas County.

Original *habeas corpus* proceeding, asking release from arrest under an indictment charging relator with having and keeping intoxicating liquors in a public road, and transporting the same unlawfully in local option territory.

The opioion states the case.

*Puckitt, Mount & Newberry,* for relator.—On question of transporting intoxicating liquors; Ex parte Hopkins, 171 S. W. Rep., 1163; Longmire v. State, 75 Texas Crim. Rep., 616, 171 S. W. Rep., 1165.

On question of statewide prohibition, etc., being unconstitutional:

Dawson v. State, 25 Texas Crim. App., 670; Ex parte Brown, 42 S. W. Rep., 554; Lewis v. State, 58 Texas Crim. Rep., 351; State v. Texas Brewing Co., 106 Texas, 121.

On question of proclamation by Governor at called session of the Legislature: Blalack v. State, 3 Texas Crim. App., 376; Armstrong v. Taylor, 87 Texas, 598.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of validity of legislative Act in aid of prohibition: Ex parte Rippy, 44 Texas Crim. Rep., 72; Ex parte Massey, 49 id., 60; Snearley v. State, 40 id., 507; Snead v. State, 55 id., 583; Fitch v. State, 58 id., 363; Ezzell v. State, 29 Texas Crim. App., 521; Edmanson v. State, 64 Texas Crim. Rep., 413; 142 S. W. Rep., 887; Dupree v. State, 56 Texas Crim. Rep., 562, Rep., 301.

MORROW, JUDGE.—This is an original application for a writ of *habeas corpus.* The record discloses that at the time of the offense charged, the sale of intoxicating liquors was prohibited throughout Dallas County by the adoption of the local option law. It is charged in separate counts of the indictment that relator "did have and keep" intoxicating liquors in a public road in Dallas County and that in said county he unlawfully transported such liquors for other than sacramental, medicinal, mechanical, or scientific purposes. He demands release on the proposition that "to have or keep" intoxicating liquors in a public road in prohibited territory, or to transport such liquor in such territory is not illegal when not intended for an illegal or unlawful use.

Both counts in the indictment relate to alleged violations of the amended Allison Shipping Law, embodied in Chap. 67, Acts of the Thirty-third Legislature, and Chap. 31, Acts of the Thirty-fifth Legislature, fourth called session, wherein it is declared unlawful "to have or keep" intoxicating liquors for personal use or otherwise in a public road or other public place in a district in the State in which the local option prohibition law is in force; and also prohibits the transportation of such liquors in such district, each of said provisions containing exceptions, namely, that it is not unlawful "to have or keep" such liquors in the home, nor to personally carry it into such district for personal use.

It affirmatively appears that the offense charged took place in Dallas County, in which at the time the sale of intoxicating liquors was prohibited by the adoption of the local option prohibition law by vote of the people in accord with the Constitution and laws of the State. The right and power of the Legislature to pass the laws mentioned is challenged. The reason for relator's contention is not made quite clear to the writer. His references to Chap. 24, Acts of the Thirty-fifth Legislature, fourth called session, the State-wide prohibition law, occur to the writer as not pertinent for the reason that

the Allison law supra, was passed at the same session of the Legislature at which the State-wide law was passed, and the Allison law having special reference to those areas in the State in which the sale of intoxicants was prohibited under the local option law, its provisions with reference to the shipment and transportation would prevail in such territory over any provisions in Chap. 24, supra, upon the same subject, such is the effect of the rule that in the construction of acts of the same session of the Legislature the whole must be taken and construed as one act. Cain v. State, 20 Texas, 355; Joliff v. State, 53 Texas Crim. Rep., 61. In view of the construction given section 20 Art. 16, of the Constitution by this court and the Supreme Court in various decisions rendered, we are unable to concur in the suggestion that the limitation upon the legislative power therein contained would have the effect of condemning the law in question. That that section is restrictive of the method of prohibiting sales of such liquors is held in Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100, to which we are referred; but that that restriction is not extended to prevent the legislature from passing laws in aid of the enforcement of the prohibition against sales, has been so often declared that its re-assertion would seem superfluous were it not done in response to the points urged by the learned and able counsel for the relator. The laws in question were, in the opinion of the Legislature, adapted to making the enforcement of the local option prohibition law in districts in which it was in force, more effective. With that end in view the transportation into such territory and the keeping in a public place, therein, with the exceptions named, have been denounced as a felony. The principle that would condemn them was involved against the so-called blind tiger law which, to the same end and by similar means, fixed a penalty for the sale of such liquors in prohibited territories by means of blind tiger, which penalty was in excess of that for making sales under the local option law. The contention was answered by the court in the following terse language by the present Presiding Judge: ''We think the statute defining and prohibiting the sale of liquor by means of a blind tiger is not violative of a constitutional provision, and it is within the power of the Legislature to prohibit sales of intoxicants in this manner, and prescribe a higher punishment for this character of sale than is provided against other characters of sale.'' Schwulst v. State, 52 Texas Crim. Rep., 427.

The Supreme Court, in passing upon the power of the Legislature to authorize the use of the writ of injunction by officials as an auxiliary to the enforcement of the local option law, affirmed the existence of such power. Ex parte Dupree, 101 Texas, 150. And in Dupree v. State, 102 Texas, 455, said: ''The proposition that only sales may be prohibited has sometimes been thought to imply the further one that the prohibition can only be enforced by denouncing and punishing as an offense the completed sale. This restricts the

power granted within too narrow limits." The same principle was applied in Snearley's case, 40 Texas Crim. Rep., 510 in which a license regulation applicable to the sale of intoxicating liquors for the purposes permitted by the local option statute in prohibited territory was upheld; and in Fitch v. State, 58 Texas Crim. Rep., 377, the court rejected the contention here made touching the extent of the restriction imposed on the Legislature by section 20, Article 16 in giving sanction to the law which created the offense of pursuing the business of unlawfully selling intoxicating liquors in prohibited territory and fixing a punishment therefor more severe than that imposed under the local option law for making individual sales of such liquors. While at the time they were rendered there was expressed a conflict of views by members of the court in Snearley's case and in the Fitch case, these decisions have been uniformly followed, Gearhart v. State, 81 Texas Crim. Rep., 540, 197 S. W. 187, and the correctness of the Schwulst case, supra, has not been challenged.

We are referred by counsel to Ex parte Hopkins, 75 Texas Crim. Rep., 611, and to Longmire v. State, 75 Texas Crim. Rep., 616. In these cases the original Allison Act, chap., 67, Acts Thirty-third Legislature was construed, and while there was lack of harmony among the judges touching its provisions, the conclusion reached by the majority, so far as it bears upon the present question, was that it was within the legislative power to provide that the citizen could not carry intoxicating liquors into districts of the State in which the sale was prohibited, except for his personal use or for that of members of his family.

That the provisions of the law in question, with the limitations named, are not obnoxious to the Constitution of the United States is, we think, demonstrated by the enactment of the so-called Webb-Kenyon Law by Congress and its enforcement and construction by the United States Supreme Court. An example is found in Clark Distilling Co. v. Western M. & R. Co., 242 U. S. 311, 61 L. Ed. 326. The question arose upon the application of the Webb-Kenyon law to a statute of West Virginia, which is quite similar to the statute in question, in that it made unlawful the having or keeping of intoxicating liquors in a public place for personal use or otherwise, and also prohibited their transportation. The Supreme Court held that the extreme provision of the State law in question did not render inoperative, upon shipments of intoxicants to the State of West Virginia, the act of Congress. From the decision we take the following quotation:"

"It is only necessary to point out that the considerations which we have stated dispose of all contentions that the Webb-Kenyon Act is repugnant to the due process clause of the 5th Amendment, since what we have said concerning that clause in the 14th Amendment as applied to State power is decisive.

"Before concluding, we come to consider what we deem to be arguments of inconvenience which are relied upon; that is, the dread expressed that the power by regulation to allow state prohibitions to attach to the movements of intoxicants lays the basis for subjecting interstate commerce in all articles to State control, and therefore destroys the Constitution. The want of force in the suggested inconvenience becomes patent by considering the principle which, after all, dominates and controls the question here presented; that is, the subject regulated and the extreme power to which that power may be subjected. The fact that regulations of liquor have been upheld in numberless instances which would have been repugnant to the great guaranties of the Constitution but for the enlarged right possessed by government to regulate liquor, has never, that we are aware of, been taken as affording the basis for the thought that government might exert an enlarged power as to subjects to which, under the constitutional guaranties, such enlarged power could not be applied. In other words, the exceptional nature of the subject here regulated is that basis upon which the exceptional power exerted must rest, and affords no ground for any fear that such power may be constitutionally extended to things which it may not, consistently with the guranties of the Constitution, embrace."

To the point that the statute in question in the instant case does not deny any right guaranteed by the Federal Constitution, we refer to a recent decision of the United States Supreme Court in which it is said:

"It must now be regarded as settled, that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guaranties of the 14th Amendment: Bartemeyer v.Iowa, 18 Wall, 129, 31 L. Ed., 929; Boston Beer Co. v. Massachusetts, 97 U. S. 25, 33, 24 L. Ed., 989, 992; Mugler v. Kansas, 123 U. S. 623, 662, 31 L. Ed., 205, 210; 8 Sup. Ct. Rep., 273; Crowley v. Christenson, 137 U. S., 86, 91 34 L. Ed. 620, 623, 11 Sup. Ct. Rep., 15; Purity Extract & Tonic Co. v. Lynch 226 U. S., 192, 201, 57 L. Ed., 184, 187, 33 Sup. Ct. Rep., 44; Clark Distilling Co. v. Western Maryland R. Co., 242 U. S., 311, 320, 321, 61 L. Ed., 326; 335, 336, L. R. A. 1917-B, 1218, 37 Sup. Ct. Rep., 180, Ann. Cas. 1917B, 845; Seaboard Air Line R. Co. v. North Carolina, 243 U. S. 298, ante, 299; 38 Sup. Ct. Rep., 96.

"As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. Booth v. Illinois, 184 U. S., 425, 46 L. Ed., 623, 22 Sup. Ct. Rep., 425; New York ex rel. Silz v. Hosterberg, 211 U. S., 31, 35 L. Ed. 75, 29 Sup. Ct. Rep., 10; Murphy v. California, 225 U. S. 623, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153, 32 Sup. Ct. Rep., 697; and Rast v. Van Doman & L. Co.,

240 U. S., 342, 364, 60 L. Ed. 679, 689, L. R. A. 1917A, 421, 36 Sup. Ct. Rep., 370, Ann. Cas. 1917B, 455. And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibitions of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose." Crain v. Campbell, 245 U. S. 308.

The statute considered was more drastic than that here involved, and in fact was restrictive to a degree which has been held unauthorized under several of the State constitutions. Ex Parte Wilson, 119 Pac. Rep. 596; Com. v. Campbell, 24 L. R. A. (N. S.) 172; Com. v. Smith, L. R. A. 1915D, 172.

We mention the case of Crain v. Campbell, for the purpose of illustrating the trend of the decisions of the United States Supreme Court in the interpretation of the Federal Constitution, and not as indicating that under the Constitution of this State a law in the terms of the Idaho statute would be valid. That question is not before us. The views we are expressing are limited to the law which we are called upon to construe. Many of the states of the Union having provisions in their bill of rights substantially like ours, have passed laws similar to that in question here; that is, forbidding the keeping of intoxicating liquors in public places, in localities where the sale of such liquors was prohibited, and limiting the transportation of such liquors into such territory, and in numerous instances the courts have sustained such acts. A notable and recent case is Dulaney v. Plunkett, L. R. A. 1917D, p. 926, in which the Supreme Court of Georgia upheld a statute quite similar to the one in question, and in so doing rendered a decision which in reasoning and citation of precedents is interesting but too long to quote. Other illustrations will be found in Van Winkle v. State, (Del.), 91 Atlantic, 385; Burt v. State, (Ala.), 72 Southern Rep., 266; State v. Wignall, 150 Iowa, 650; 34 L. R. A. (N. S.) 507; Mayness v. State (Okla.) 119 Pac. 644; Atkinson v. So. Ex. Co., (S. C.), 48 L. R. A. (N. S.), 349; State v. Seaboard Air Line, 169 N. C., 296; Glen v. So. Ex. Co., 170 N. C., 286; Am. Ex. Co. v. Beer, Ann. Cas. 1916D, 127, 107 Miss. 528; Danciger v. Cooly, (Kan.), 157 Pac. 455; Com. v. Mixer, 207 Mass., 141; Adams Ex. Co. v. Com. (Ky.), 157 S. W., 908, 48 L. R. A. (N. S.) 342.

Statutes in effect like the one in question have been so generally sustained, that in the absence of some provision of our own Constitution, which would render inapplicable the decisions in other jurisdictions, we are not warranted, in the opinion of the writer, in deciding that the Legislature is impotent to pass a valid law, prohibiting the owner of whisky from "having or keeping" it in a public road or place, where its sale is prohibited, or to prohibit his carrying it into such territory except for the use of himself or his family, or for the purposes for which the statute, by its terms, permits its transportation

into such territory. Especially is this true in view of the opinion in Longmire v. State, 75 Texas Crim. Rep., 616, from which we take the following: "We hold that the proper construction of this Act shows that it was the intention of the Legislature to prohibit, and by its terms they do specifically prohibit, the shipment, transportation, carriage (personal or otherwise), and delivery of intoxicating liquors into prohibition territory for any purpose other than for medicinal, scientific, and sacramental purposes, and the personal use (and members of his family) of the person receiving same; that a law with such intent and purpose has a place in the system of laws intended to prevent illegal sales of intoxicating liquors in prohibition territory; and that the law as thus construed, is valid, and violative of no provision of the Constitution."

The Act amending chapter 67, Acts Thirty-third Legislature, was passed at a special session of the Legislature, and the suggestion is made that under Section 40, Article 3, of the Constitution, the amendment was void because not embraced in the subject upon which the Legislature was, under the proclamation and messages of the Governor, permitted to consider, Sect. 40, Art. 3, declares that there shall be no legislation upon subjects other that those designated in the Governor's proclamation or message.

In his proclamation calling the special session, the Governor called on the Legislature to pass a law prohibiting the sale of intoxicating liquors within ten miles of any army camp; also to prohibit sale or gift to soldiers throughout the State. Elaborating his objects in subsequent communications, the Governor attached correspondence between himself and the Secretary of War, in which it is made plain that the design was to prevent intoxicants reaching the soldiers who were training at various localities in the State, and the means suggested was to designate zones in which such liquors "shall not be allowed."

We are of the opinion that the Governor, in his proclamation and messages submitted to the Legislature the subject of legislation to restrict the liquor traffic and render such liquor inaccessible to the soldiers. It is not contemplated that the Governor shall state the details of legislation in order to give the Legislature jurisdiction to consider it at a special session. Brown v. State, 32 Texas Crim. Rep., 132. He must submit the subjects, but the methods are within the discretion of the Legislature. Long v. State, 58 Texas Crim. Rep., 209. It was held that a call "To reduce taxes, both ad valorem and occupation, as it may be found consistent with the support of efficient State government," embraced the whole subject of taxation, and authorized the levy of taxes on property and occupations not previously taxed. Baldwin v. State, 21 Texas Crim. App., 592.

The messages, however, having had in contemplation the designation of localities "in which intoxicating liquors shall not be allowed"

would seem to embrace the statute in question even under a more narrow construction of the scope of the Governor's messages.

If it were granted, however, that chapter 31 of the Act of the Thirty-fifth Legislature was not valid, it would not follow that the offense charged would not be within the purview of chapter 67, Acts Thirty-third Legislature.

One count in the indictment charged that, relator transported whisky into Dallas County for other than sacramental, mechanical, medicinal or scientific purposes. The general purpose and scope of chapter 67, Acts Thirty-third Legislature, as it appeared on the statutes before the amendment of 1918 was made, was to prohibit the transportation of intoxicating liquors into parts of the State in which the sale of such liquor was prohibited by law. See Act Thirty-third Legislature, First Called Session, p. 62, chap. 31. Various exceptions were embraced, and we quote section 12 as follows: "It shall not be necessary in any prosecution under this Act to negative the exceptions herein made, but the same shall be available to the defendant as purely defensive matters." Aside from this clause in the Allison law, under the general rule in *habeas corpus* cases, the indictment charging that the liquors were unlawfully transported into prohibited territory, would sufficiently charge an offense to suffice, on application, for *habeas corpus*, unless there was no law on which the prosecution could be founded. Ex parte McKay, 82 Texas Crim. Rep., 221, 199 S. W. Rep., 637.

The application is dismissed and the relator remanded to the custody of the Sheriff of Dallas County.

*Dismissed.*

Delivered May 14, 1919.

DAVIDSON, Presiding Judge (dissenting).

LATTIMORE, Judge (concurring).—I am in accord with the views expresed by Judge Morrow, that if the Governor submit to a called session of the Legislature proposed legislation on any given subject, the whole subject is thus opened for such legislation as the law-making body may see fit to enact, and that the Fourth Called Session of the Thirty-fifth Legislature had the constitutional power to pass the Act or Acts complained of in this application.

I am further of the opinion that the application for this writ should be dismissed and the relator remanded. There is nothing in the record before us that presents any matter for our adjudication. There is no statement of the facts and nothing except the application, which under the unanimous holding of this court, is a mere pleading and proves nothing. We have no means of knowing if any of the things alleged in said application be true or not. For this additional reason, I think the application should be dismissed.

*Dismissed.*

DAVIDSON, Presiding Judge (dissenting).—This is an original application for a writ of *habeas corpus* which, upon hearing, the majority of the court has dismissed, remanding relator to trial.

The indictment contains two counts, the first charging a violation under what is known as the Allison Amended Act, passed by the Fourth Called Session of the Thirty-fifth Legislature, page 55, of said Act. It is framed under Section 3, of that Act, which makes "unlawful for any person to keep or have for personal use, etc., intoxicating liquors *within any territory or subdivision of this State in which the sale of intoxicating liquors has been prohibited under the Constitution and laws of this State.* Provided, however, that nothing contained in this section shall prevent one in his home from having intoxicating liquors when such having is in no way a shift, scheme or device to evade the provisions of this Act." The second count is framed under what is known as the State-wide Act passed at the same called session, and is section 3 of that Act, which provides a punishment for the *transportation within or importation into this State by any railroad*, common carrier, automobile, by private conveyance, or otherwise, or the receipt of any spirituous, vinous, or malt liquors or medicated bitters—capable of producing intoxication, or the receipt of same by any person, firm or corporation, for such transportation, or the delivery of same after such transportation—except for medicinal, scientific, mechanical or sacramental purposes.

The second count alleges that relator did transport whisky in person not coming within any of the exceptions enumerated in that article. The first count, therefore, recites a violation of the local option law, and the other of the State-wide Act. The application alleges that both Acts are unconstitutional, and in violation of Art. 16, Sec. 20 of the Constitution, which is the local option clause.

Applicant's briefs cover practically every phase of the two Acts. Transportation under the Allison law applies only to local option territory. It does not and cannot apply to those portions of the State where local option is not in effect, and the Legislature did not undertake to apply it to the anti-local option territory. If brought under the State-wide Act, it is under an unconstitutional enactment. See Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100; Ex parte Hollingsworth, 83 Texas Crim. Rep., 400, 203 S. W. Rep., 1102; Dawson v. State, 25 Texas Crim. App., 670; Lawhon v. State, 26 Texas Crim. App., 101; Robinson v. State, 26 Texas Crim. App., 82, and State v. Texas Brewing Co., 106 Texas, 121.

The question of the constitutionality of both Acts is squarely raised and presented on the face of the application. These questions are raised with sufficient definiteness to require their consideration and decision. The application for writ of habeas corpus is sufficient to present the illegality of the statutes. It is based upon the proposition that applicant is illegally restrained of his liberty by reason of

the unconstitutionality of either or both acts under which he is held, and these are specifically pleaded. My brethern are in error in holding the application is not legally sufficient to present the question. It is not necessary to make up written issues in *habeas corpus* cases. This may be done by the applicant if he so desires. Art. 208, C. C. P. That article is specific and definite that it is not necessary to make up such issues in writing. Illegal restraint is the issue to be determined. Arts. 181, 182, 183, C. C. P. The right to a writ of *habeas corpus* is one of right and is not to be circumvented nor hedged in by technical rules of pleading. That right is as broad, as extensive and comprehensive as illegal restraint may mean or imply. This is fixed definitely by statute. See articles. *supra,* and also Bill of Rights, Art. 1, Sec. 12, which provides: ''The writ of *habeas corpus* is a writ of right, and shall never be suspended. The legislature shall enact laws to render the remedy speedy and effectual.'' Applicant has fully brought himself within the law which requires this court to give him a full hearing on his detention. I cannot, therefore, concur with my brethren in dismissing this application, nor their reasons for so doing. Both Acts of said Fourth Called Session, Chap. 24 and Chap. 31, ought to be held void because enacted at a called session of the Legislature without authority from the Governor, specified either in his call or communication by him to that body during its sitting. Art. 4, Sec. 8, of the Constitution ordains that the Governor may, on extraordinary occasions, convene the Legislature, etc. His proclamation, therefore, must state specifically the purpose for which the Legislature is convened. This is mandatory. Art. 3, Sec. 40 of said instrument provides: ''When the Legislature shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session, or presented to them by the governor; and no such session shall be of longer duration than thirty days.''

An inspection of the proclamation issued by the Governor, and communications by him to the Legislature, fails to disclose any suggestion, as I understand, that he desired their consideration of matters contained in the State-wide Act or in the Allison bill. The nearest possible approach to such matters is to be found in the following language:

''I am not unmindful of the fact that as a means of accomplishing the results here sought, many people advocate statutory state-wide prohibition, with more or less confidence in its ultimate success. I do not assume for a moment to pass judgment upon the constitutionality of such a law, yet all admit that eminent lawyers have expressed the opinion that a law along this line is in conflict with the Constitution of the State.

''The Zone Law, however, is deemed to be in the nature of a regulatory rather than a prohibitory act, and involves merely the exercise

of that police power with which the State is fully clothed to deal with the barter, sale and exchange of liquor. In other words, it is indicated that statutory prohibition would offer the possibility of vigorous contest in the courts, while a zone law would not be open to successful attack through court procedure.

"The need of the hour is immediate for efficient suppression of an admitted evil. The measure that is strong because of its certainty is to be preferred over a measure that in reaching too far may incur the risk of failing entirely."

A fair and a reasonable construction of this language does not convey but excludes the idea that the Governor submitted or intended to submit state-wide prohibition, or the prohibition of the manufacture of intoxicants for legislative action, and he nowhere alludes even to amending the local option statutes. The only idea of the Governor evidenced by his call and communications was that it was a pressing necessity to have the Legislature pass laws to prevent the obtaining of intoxicating liquors by those engaged in the military service of the United States in and about military zones. By no rule of construction can this be extended to include the entire population of the State. He was seeking only to have the Legislature prevent the soldiers from obtaining intoxicants within specified limits. His purpose was and is specific, and confined only to that one purpose. No inference can be drawn from what he wrote that it was his purpose for the Legislature to repeal or amend statutory provisions with reference to local option. It was clearly not his purpose to set aside and hold for naught the local option law operative in the many sections of the State by virtue of the vote of the people. The Legislature enacted laws in accordance with his wishes, to prohibit the sale to soldiers and those engaged in the military service of the United States government. There was also an enactment to punish for selling to soldiers anywhere in Texas; as well as in certain zones. But both acts limited operation to soldiers, and only to soldiers, as called for by the Governor. He nowhere directly or indirectly, by *innuendo* or otherwise, intimated that sales should be prohibited to the citizenship of the State. It was only the soldier he mentioned. It is all sufficiently plain that he did not and could not ask for an abolition of the local option laws and their repeal. This was settled in Ex parte Hollingsworth, *supra.* By reason of Art. 16, Sec. 20, the State was divided into two classes of territory, one in which the people by referendum vote could adopt prohibition. All other territory in the State is in another and distinct class not operative under prohibition but under regulation. This is expressly recognized and held in Ex parte Hollingsworth, *supra.* It is again so held in Ex parte Myer, *supra.* It is the recognized and settled doctrine in all cases from Robertson v. State, 5 Texas Crim. App., 155, where the question has come before the court. It was again so

declared since the opinion in Ex parte Myer, in Jarrott v. State, 84 Texas Crim. Rep., 544; 209 S. W. Rep., 663, and White v. State, 84 Texas Crm. Rep., 545; 210 S. W. Rep., 200, recently decided. This division of territory was tersely stated by Judge Hurt in Ex parte Fields, 39 Texas Crim. Rep., at page 54, in the following language:

"Anti-prohibition is in force in every county, justice precinct, town, etc., in this State, unless voted on at an election held for that purpose. It requires no act to put in force the right to sell intoxicating liquors. This right was not conferred upon the people of the counties, justice precinct, etc., by the Constitution; but the right to prohibit the sale of intoxicating liquors was conferred upon the county, justice precinct, etc. Now we state this proposition: That, until the Legislature repeals the acts enforcing this right, there is no power within this State to prohibit the county from declaring by an election that the sale of intoxicating liquors shall be prohibited therein."

It is to be presumed that the Governor understood this when he issued his call under a well-known axiomatic rule. That these two classes of territory exists is not the subject of debate, and that they must be controlled by different legislation is equally, nondebatable. A law that prohibits the sale of intoxicants in a local option territory has absolutely no application to anti-prohibition territory. Nor has a law operative in anti-prohibition territory any force or effect in prohibition territory. These two propositions are divided by as impassable a gulf as that which separated Dives and Lazarus. They cannot occupy the same territory at the same time any more than two bodies can occupy the same territory in physical nature. The governor recognized this and only submitted the regulation idea to the exclusion of the State-wide prohibition proposition. This, he said, was done to avoid litigation which would arise from passing a State-wide act of prohibition. His idea was to throw the same protection around the soldiers that protects minors. The question sometimes presents difficulty in deciding just what subjects are covered by the call or communication of the Governor; at least the courts seem to find trouble with reference to these matters. It seems clear that where the Governor submits generally a subject, the Legislature would be empowered to enact legislation that would carry into effect inferior matters included in the main proposition, but where the Governor submits only the minor proposition, the rule is that the Legislature cannot enlarge to cover a broader and not included superior question. In other words, where the general subject is submitted, the Legislature is at liberty to fully deal with it generally, otherwise not. This it emphasized by reason of another proposition, that is, that special sessions are called only on *extraordinary occasions,* and only to bring about new legislation to meet emergencies. The only

supposed emergency moving the Governor, he says, was protection of the soldiery. Among cases cited by the State and by my brethren to sustain the legislative act is Brown v. State, 32 Texas Crim. Rep., 119. The writer wrote that opinion and sought to familiarize himself with the question at the time the opinion was written. In the light of what has been said, I have re-read that opinion and the reasoning upon which it was based. I see no reason to change the views I then expressed or thought were in harmony with the law or what ought to be the law. That opinion and its reasoning does not apply to the question here at issue. In that case it is shown that the Governor called an extra session of the Legislature for the purpose of reapportioning the State into judicial districts. This covered the subject of such reapportionment throughout the State. It covered all such districts. The judicial district in which Bastrop county happened to be located was reorganized under said call. It was held the Legislature had that right under the general call. It was one of the judicial districts of the State and the Governor's call included all and authorized the Legislature to reapportion all or any of the judicial districts. Bastrop district was one of the districts and, therefore, subject to legislation under the call. But, suppose the Governor had in his call limited the Legislature to a reorganization only of the district in which Bastrop county was situate? Would the same rule apply, and would it be contended that under such call the Legislature would be empowered to reorganize every district in the State? Certainly not. It would be stretching legislative power beyond the authority in the call. The Baldwin case, 21 Texas Crim. App., 592, and the Long case, 52 Texas Crim. Rep., 209, come within the same rule.

It will be noted that the Governor did not in any communication authorize State-wide prohibition legislation as to intoxicating liquors. All legislation authorized by him was regulating in nature and limited in purpose. Why the zone law was enacted may not readily be explained, in view of the fact that a general act had been passed prohibiting selling to soldiers everywhere within Texas. It occurs to the writer that when the Legislature had prescribed a punishment for securing whisky in any form whatever for soldiers, it includes every soldier in the service within the confines of Texas, whether in or out of a zone. If within dry territory both laws would be inoperative. It is settled in Texas that where intoxicants are sold to minors in a local option territory, the prosecution is for violation of the local option law,—not under the statute prohibiting sales to minors. Atkinson v. State, 46 Texas Crim. Rep., 231; Stephens v. State, 47 Texas Crim. Rep., 604; Tracy v. State, 48 Texas Crim. Rep., 50; Tompkins v. State, 49 Texas Crim. Rep., 156; Kerr v. Mohr, 47 Texas Civ. App., 3. This is based upon the proposition that the local option law supersedes all manner of selling intoxicants in such territory. This is so thoroughly settled it is useless to discuss it or cite other authorities.

There is a contention that because the Governor approved the State-wide act, therefore it should be held as coming within his call. An inspection of the Governor's action and language approving this bill does not sustain this contention. It would seem useless to discuss this because in no event could his approval of the act relate back and include it in his call. It cannot thus be given vitality. It must be included in the call or in some communication by him to that body in order to justify legislative action. Casino v. State, 34 S. W. Rep., 796; Wells v. Mo. Pac. Ry., 19 S. W. Rep., 530. I deem it unnecessary to discuss it. The Governor in his approval of that bill, after speaking of the war and his desire to uphold the hands of the Secretary of War, and guard and protect the soldiers from themselves and those who would secure intoxicants for them, uses this language: "The object I had in view in submitting liquor legislation to the Legislature at this time was to protect the soldiers, but the Legislature in its wisdom has seen fit to include the whole State; therefore, to prevent discrimination and to cause whatever sacrifice is involved to be more evenly distributed than is provided in the Zone Law, I approve this Act adopting prohibition for all, leaving the question of constitutionality which many lawyers have raised to be determined by the courts." This language is sufficiently definite to show the purpose of the Governor both in calling the session and in approving this bill, if this be an approval. His purpose was to submit only regulatory legislation and this only to protect soldiers, not State-wide prohibition, nor local option legislation. It is his express declaration. The Legislature did that "in their superior wisdom" in furtherance of their common designs, not that of the Governor's. He had limited such legislation to soldiers and the protection of military employes. In any event, if he approved it directly, positively and unequivocally, that fact could not give it vatility and relate back to or include it in his call or some communication. See Casino v. State, and Wells v. Mo. Pac. Ry., above cited. It must be within the call or communication, for authority to legislate.

Again, there is no suggestion that I have been able to discover in his call or communication that authorized local option legislation. Local option covered territory where the people had voted it into existence. Even the zone law could not in such territory be operative. Cases cited, *supra*. Ex parte Hollingsworth, Ex parte Myer, Jarrott v. State, and White v. State, *supra*. From no viewpoint could local option legislation be included in the call for zone legislation, nor could State-wide prohibition. Neither State-wide nor local option are regulatory. So from any viewpoint the amended Allison bill falls outside of the breast works. It is not to be presumed that the Governor would submit such antagonistic legislation to the same Legislature at the same time to be enacted in direct opposition to

each other.  Nor is it to be presumed that he intended to place him-self in the attitude of submitting to the Legislature a State-wide act of prohibition for their consideration which would cover the entire State to the destruction of local option, and at the same time submit local option legislation.  Presumably he would understand their antag-onism and incompatibility, and that both could not exist in the same territory at the same time.  Ex parte Myer, *supra.*

Another question urged is that these laws are so antagonistic and at variance with each other, and in such conflict, that it is impossible to tell which is really intended to operate.  In other words, that by reason of these conflicts and incongruities they cannot occupy the same space at the same time.  By looking at the legislative Acts of the Fourth Called Session, it will be noted that that body enacted a license law found on page 9, which is an amendment to Art. 611, P. C., and prohibits anyone except licensed dealers to sell directly or indirectly *spirituous* or *vinous* liquors capable of producing intoxi-cation in quantities of one gallon or less.  On page 10, Art. 612, P. C., was amended with reference to the sale of *malt liquors,* and fixed a penitentiary punishment for its violation.  Under these Acts the citizen is authorized to sell under license.  There are other Acts of the Legislature which I deem unnecessary to notice, known to the bar and bench and people of Texas as the Fitzhugh-Robertson law, under the provisions of which, in non-local option territory, parties could sell under license.  These two acts are amendments to those and regulatory.  They are not prohibition laws.  They are in direct antag-onism to the State-wide Act.  Under one law a party could sell, and under the State-wide Act he would be punished if he did sell.  So if a party complied with one law he would be convicted as a felon and put in the penitentiary under the other act.  Sec. 6b of the State-wide Act expressly repeals all license laws and prohibits courts and officers from renewing any license or issuing any license for the selling of intoxicants.  These acts were passed by the same body at the same session.  Sec. 7 of that act cumulates all former legislation with the State-wide act, however much in conflict.

Then on page 11 is found an Act of that Legislature punishing anyone in Texas who directly or indirectly shall purchase for, or pro-cure for, sell, give or deliver, or cause to be given or delivered to any person engaged or enlisted in the military service of the United States, any intoxicants.  This was enacted for the purpose of pro-tecting soldiers, and punishes anyone who secures for them intoxi-cating liquors.  If the State-wide act is constitutional, it embraces the same matters as does the above act, and if the State-wide act is valid, the party could only be convicted or prosecuted under the State-wide act.  Cases already cited.  These Acts are repugnant—in conflict.

It will be noted that the State-wide Act also prohibits the transportation of intoxicants, or the solicitation of orders for the sale of intoxicants. This seems to cover practically the same matters as that just quoted. It applies to everybody in the State, soldiers included, whether in or out of a zone. The State-wide act would include citizen and soldier.

There are other laws with reference to license, when and how such license can be obtained and operated. To these the same reasoning would apply. These laws would all fall under the condemnation of the State-wide act. The State-wide Act prohibiting selling, etc., would substitute and supersede all other prohibitory laws, and necessarily abrogate regulatory laws.

Again, on page 55 of the same Acts of the Legislature, is found what is called the Amended Allison Bill. This prohibits the shipment and transportation and other matters of intoxicants in local option territory. That Act is predicated upon the proposition that there is local territory, and that the Legislature might apply suitable legislation. State-wide and local option prohibition cannot exist in the same territory. They directly conflict.

Two things might be stated here: first, that the Governor did not submit local option legislation, and, second, it is in direct conflict with the State-wide Act, and the State-wide Act is in direct conflict with it. If the State-wide Act is constitutional, local option laws as well as the local option clause of the Constitution would cease to exist. The State-wide Act, if valid, repealed the Constitution and all legislation under it, and wiped out every local option district in Texas where the law had been voted into operation by the people. The two Acts cannot stand. Speaking from an unbroken line of authority, there is not a dissent from the proposition that the local option law would be supreme and the State-wide Act void. This court has taken that view in all of its decisions, and the courts in Texas have so held. There is a conflict here between the State-wide Act and the Amended Allison Bill. It is not thought necessary to discuss the incongruities of the Allison Act within itself. They are patent. For instance, it would be difficult to comprehend how a party would be authorized to carry intoxicants from a point where he is authorized to purchase it to a point inside of local option territory without some means of carrying it. If he does carry it he is to be sent to the penitentiary. If he carries it by any of the means mentioned in the statute he becomes a felon, and yet the same law authorizes him to carry it to his own home for his personal use and that of his family. I shall not stop to discuss other incongruities. The State-wide Act was passed for the general, broad, and only purpose of making Texas in its entirety a dry State. In other words, to enact State-wide prohibition so as to cover every inch of territory in the State. As a means of doing so it prohibits the barter, sale or ex-

change of intoxicants within the boundaries of Texas. It prevents the manufacture of intoxicants as an aid and one of its ingredients and necessary elements; it interdicts transportation in order that there could be no sale; that there shall be no solicitation of orders for transportation of intoxicants, and the prevention of cold storages. These are all specified in the act. Therefore, the act does not divide the State into two divisions of territory, one wet and the other dry. It could not operate in local option territory, and it does not pretend to confine its operation to wet territory. But if it did otherwise, the law would be clearly unconstitutional. This has been so held even by the recent decisions of this court. There was but one main purpose of this Act, and that was to create State-wide prohibition. The other matters mentioned, to-wit: barter, sale and exchange, and the manufacture, and solicitation of orders and cold storages, were included to consummate and bring about the main purpose; that is, to make the State entirely and completely dry. The provisions of this Act are not severable. They cannot be separated from the main purpose. If one stands, all must stand in order to bring about and carry out the purpose of the Legislature. If one falls, all must fall. The Act as an entirety must stand or fall. It was the purpose of the Legislature by that Act to make the State entirely dry; to not only prohibit the sale but also the manufacture, transportation, and solicitation of orders, and cold storages. The purpose of the Act would otherwise be defeated. The prohibition of the transportation of intoxicants was but one of the means by which the State was to be made completely dry. The prohibition of the sale only would not accomplish that purpose. It was deemed as necessary to prevent manufacture and transportation as it was to prohibit the sale. So with reference to solicitation of orders and cold storages. So it will be seen that the legislative purpose will be defeated if these provisions are severable. These provisions are so interwoven that one cannot be eliminated without destroying the purpose of the whole. The purpose of the Legislature, that is, State wide prohibition, cannot be carried out as intended with either eliminated. If the act is valid, it must be in its entirety, otherwise State-wide could not be carried into effect as intended by the Legislature. When several parts of an act are dependent one upon the other so that it cannot be presumed that the Legislature would have passed the Act without intending all should stand, then the whole Act must fall if part of it is unconstitutional. Western U. T. Co. v. State, 62 Texas 630; Ex parte Massey, 49 Texas Crim. Rep., 64, 65; State v. Hamry, 65 S. W. Rep., 949; Ex parte Woods, 52 Texas Crim. Rep., 575.

The reasoning would be stronger where all the provisions are a part of and necessary to carry out and put into effect the main purpose of the Act, and in this Act its only real purpose. In such

case each provision would be necessary to consummate such purpose, without which the Act would fall short of and fail as to such purpose.

There are a great many other Acts of the Legislature in conflict with this act which it is deemed unnecessary to discuss, as it would render the opinion quite lengthy. Some of these statutes may be found in the Revised Statutes, Arts. 7379, 7393, 7394, 7479, 7480, 7483, P. C., and Arts. 606, 606g and 662i Branch's Ann. P. C., p. 718, and Vernon's Ann. P. C., p. 326. This Act would also repeal Art. 7432, Revised Civil Statutes, and Art. 613, Branch's Ann. P. C., p. 727, which exempts those engaged in the planting or growing of vineyards from shipping, transporting, carrying or delivering any grape juice or wine made by him from grapes so grown. Sec. 6-b would also prevent all officers from granting or renewing license to dealers in non-local option territory and yet Sec. 7 perpetuates the license laws justifying and requiring the issuance of same. In this connection it might be mentioned also that in Ex parte Myer, *supra,* this Act was held unconstitutional in regard to selling.

Some conflicts in this Act may be mentioned, to-wit: Secs. 6-b and 7. Section 6-b provides that no officer or court shall be authorized to issue or renew any license purporting to authorize the sale of spirituous, vinous or malt liquors, or medicated bitters, capable of producing intoxications, except as provided in this Act, and all licenses heretofore issued for such sale and outstanding when this Act becomes effective shall become null and of no effect, and yet the same Legislature enacted the provisions already mentioned and discussed authorizing issuance of license to sell. Sec. 7 provides that "this act shall be cumulative of all laws in force in the State of Texas, and of all laws of the Fourth Called Special Session of the Thirty-fifth Legislature prohibiting and *regulating* the sale of intoxicating liquors, and it is expressly provided that no law now in force in this State *prohibiting* or *regulating* the sale of intoxicating liquors, or *any Act of the Fourth Called Session* of the Thirty-fifth Legislature *prohibiting* or *regulating* the sale of intoxicating liquors is hereby repealed, but all such laws and Acts shall remain in full force and effect." These two sections are directly in conflict, incapable of reconciliation. One prohibits absolutely the issuance of license after revoking all in existence, and prohibits the renewing of such license. The other section expressly perpetuates all license laws in the State of Texas on these subjects, and makes them cumulative of this act. This includes all license and regulatory laws. These enactments cannot be harmonized. They are so irreconcilable they cannot stand. Penal Code, Arts. 1, 3, 4, 6, It may be asked: which of all these Acts and provisions can stand for enforcement? The observance of one means felony punishment under another. Compliance with one would render the citizen a felon under another. Noticing Art. 6 of the Penal Code, we discover this language: "Whenever it

appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative." That article would seem to apply with cogency and force to the State-wide act when compared with other mentioned acts, and not only with these other acts but with its own terms and provisions.

The various acts of the Fourth Called Session of the Legislature with regard to prohibition and regulation of intoxicants are so at variance with each other, incongruous and repugnant in their terms and contents, they ought to be held invalid. They are so contradictory of former acts they seek to perpetuate they should· for this reason be held nugatory. They are incapable of reconcilization or harmony. The same may be said in respect to their conflict with prior legislation on prohibition and regulation of intoxicants.

There are other questions of serious import which might be discussed to the undoing of the provisions of the State-wide Act in its varied phases as well as the amended Allison act.